E. T. CAREY, Respondent, v. D. J. CAMPBELL, Appellant.

(177 N. W. 372.)

**Specific performance — contract must be just and reasonable with adequate consideration shown.**

Specific performance will not be enforced unless the contract is just and reasonable and made for an adequate consideration.

In this case the proof fails to show any completed contract.

Opinion filed April 6, 1920.

Appeal from a judgment of the District court of Ward County, Honorable *K. E. Leighton,* Judge.

Reversed.

*Ben E. Combs,* for appellant.

Any deviation from the terms of the offer contained in the acceptance is deemed to be, in effect, a rejection, and not binding as an acceptance on the person making the offer, and no contract is made by such qualified acceptance alone. Beisker v. Ambersoon, 17 N. D. 218, 116 N. W.

45 N. D.—18.

94; Ness v. Larson, 170 N. W. 623; Hamlin v. Wister, 18 N. W. 145; Rosenbaum v. Tyszka, 158 N. W. 848; Carlock v. Johnson, 165 Wis. 49, 160 N. W. 1053; Knox v. McMurray, 140 N. W. 652; Shumway v. Kitzman, 134 N. W. 325.

The parties minds did not meet. Under these conditions there can be no contract. Carlock v. Johnson, 165 Wis. 49, 160 N. W. 1053.

*Nestos & Herigstad,* for respondent.

"The contract is complete at the moment that the acceptor deposits the letter of acceptance in the postoffice, postage prepaid and addressed to offerer's proper address." 6 R. C. L. 612; 109 N. W. 191; 6 L.R.A. (N.S.) 1016; Comp. Laws 1913, § 7194.

ROBINSON, J.  This is an appeal from a judgment for the specific performance of an alleged contract to sell plaintiff lots 9 and 10, in section 14, township 158, range 87, for $500. No payment was made nor was any possession given under the alleged contract. The parties remained in precisely the same condition as if they had not attempted to contract. It was made entirely by correspondence, which shows that there never was a compliance with the contract.

Exhibit A.

Gist of Exhibits.

E. T. Carey, Dealer in Land and Live stock.

Donnybrook, N. D., Dec. 25.

I am informed you own the old Commercial Hotel at this place. I might try to sell.

E. T. Carey.

Exhibit B.

Crookston, Minn., Dec. 30, 1918.

E. T. Carey,
    Donnybrook, N. D.

I own the hotel property and furniture. If I can get $700 cash will let it go and pay you $25.

D. J. Campbell.

Exhibit C.

D. J. Campbell,

Crookston, Minn.

I note you will take $700, and give $25 for selling your hotel property. It is no doubt worth that, but I don't know anybody that I can sell it to and would not care to bother with it at that price, though I would give you $500 and would want abstract showing good title.

E. T. Carey.

Exhibit D.

Crookston, Minn. Jan. 2, 1919.

E. T. Carey,

Donnybrook, N. D.

You say you will give $500. Well, now, my boy, the property is yours. I inclose abstract. The affidavits are an easy matter to get from someone in your town. You can get them when you wish, but I will not stand expense. If I am going to give it away, I want $500 net to me, and want to get if off my system within the next few days. You can make out deed on N. D. form and send it along and send money to First National Bank of Crookston, Minn.

D. J. Campbell.

Exhibit E.

Telegram.

Crookston, Jan. 6, 1919.

E. T. Carey,

Donnybrook, N. D.

I have sold hotel property. Return abstract at once.

D. J. Campbell.

Exhibit G.

Donnybrook, Jan. 8, 1918.

First National Bank,

Crookston.

We inclose you our check of $500, payable to D. J. Campbell, and which you are authorized to deliver him when the inclosed deed to E. T.

Carey has been properly executed and acknowledged. You will collect from Mr. Campbell your charges.

A. W. Spencer, Cashier.

Exhibit F.

Telegram.

Jan. 7, 1919.

J. Campbell,
    Crookston, Minn.

I have this day commenced action for specific performance and filed notice of *lis pendens.*

E. T. Carey.

On January 8, 1918, the Crookston bank received and returned the blank deed and $500 check. The deposition of the cashier and Mr. Campbell shows that if Campbell would have accepted the check the bank charges on it would have been from $2.50 to $5. Then, it appears that on January 6, 1919, the defendant, by telegram, revoked his offer to sell, and he never had an opportunity to accept $500 net to him.

So there was never any completed contract. But if there had been a full and complete contract, still, in the opinion of the writer, specific performance should be denied, because the case presents no equity, and does not appeal to the conscience of the court. In an action for specific performance there should be some showing beside a bare naked contract, a showing of the character and value of the property, or of part performance, or of something to appeal to equity.

True it is presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation. Comp. Laws § 7194. But that presumption may be rebutted and is rebutted and disproven by the letters of the plaintiff showing the character of the property. Specific performance will not be enforced unless the contract is just and reasonable and made for an adequate consideration. § 7198. In this case the proof fails to show any completed contract.

Judgment reversed and action dismissed, with costs of both courts.

GRACE and BRONSON, JJ., concur.

CHRISTIANSON, Ch. J. (dissenting). I am unable to agree with the majority member that the proof in this case fails to show a complete contract. In my opinion, it does show such contract.

The evidence shows that in December 30, 1917, the defendant, Campbell, wrote the plaintiff, Carey, in regard to the real property in controversy. In that letter he said: "Wish you would take charge of it, close up the doors and windows, and rent it if possible. If you cannot rent it, and happen to find anyone that would move in and take care of it, have them do so; and I wish you would write me what condition the place is in, state what you think it is worth and the prospects of selling it, and also send me a list of the furniture, dishes, etc. If I can get $700 cash for it I will let it go, think it should be worth more, but I want to clean up, and if you can make a sale at that price I will pay you $25, in fact, I will pay you that much when it is sold whether you make the sale or not, so you will get something."

The plaintiff replied to this by letter dated December 31, 1917. In such letter he said: "I note you say you will take $700 and give $25 for selling it. It is no doubt worth that, but I don't know of anybody I can sell it to, and I would not care to bother with it at that price, though I would give $500, but I would want an abstract showing good title and free from any encumbrance." The defendant, Campbell, replied by letter dated January 2, 1918. He said:

*"You say you will give $500. Well, my boy, to show you my heart is in the right place the property is yours.* I believe in quick sale and small profits and always willing to let the other fellow make something, and *I am sure that you will make good on this* as you are on the ground where you can fix it up a little and trade it to some guy as a real hotel.

"Inclosed you will find the abstract. You will note that I have had attorneys at Minot examine it under date of September 27th. The personal property tax of $49.94 has been paid by Mike King, at least he has written me that he has paid them. The affidavits they mention is an easy matter to get from someone in your town. You can get them when you wish, but I will not stand the expense connected therewith. If I am going to give it away I want the $500 net to me, and want it off my system within the next few days, as I expect to go away for a month or more, so I trust you will act accordingly.

"Please acknowledge receipt of the abstract and *you can make out the deed on the N. D. form and send it along for the signature of my wife; her given name is Kathryn. Send deed and money to the First National Bank, Crookston, Minn.*

Yours truly,

D. J. Campbell."

It seems to me that this evidences a complete contract. There was a definite offer from the plaintiff, Carey, in the letter of December 31st, which was accepted by the defendant, Campbell, in the letter of January 2d. What subsequently took place could not and did not affect the terms of the contract so made. It will be noted, however, that the defendant, Campbell, requested that the deed and money be sent to the First National Bank of Crookston. And on January 6, 1918, the defendant caused a deed, ready for execution by defendant, and a cashier's check for $500 to be transmitted to the bank so designated. The papers were accompanied by the following letter:

Donnybrook, N. Dak. Jan. 6, 1918.

First National Bank, Crookston, Minn.

Gentlemen:—We are inclosing to you herewith our check of $500 payable to D. J. Campbell, and which you are authorized to deliver to him when the inclosed warranty deed conveying out lots 9— and 10— Sec. 14—158—87 to E. T. Carey has been properly executed and acknowledged. You will kindly return the deed to us and collect from Mr. Campbell your charges.

Yours very truly,

A. W. Flinn, Cashier.

It will be noted that the deed and money were transmitted to the particular party designated by the defendant. Of course, it was obligatory upon the defendants to pay whatever charges might be incidental to the execution of the deed, such as notarial fees. It seems to me that the evidence shows that the minds of the parties met, and that a complete contract was made between them.

It may be noted that while the defendant, Campbell, in his telegram, which is set out in the majority opinion, said that he had sold the prop-

erty, he offered no evidence to that effect, although he testified in the case. Nor did he aver as a defense that he was unable to convey to the plaintiff on account of having sold the property to someone else.

It is true specific performance is not an absolute right in all cases where there is a contract. Applications invoking the equity powers of a court to decree specific performance are addressed to its sound and reasonable discretion, and are granted or rejected according to the circumstances of each case. 36 Cyc. 548; Hunter v. Coe, 12 N. D. 505, 512, 97 N. W. 869. "This discretion, is not an arbitrary or capricious one, but a sound judicial discretion, regulated by the established principles of equity. The exercise of such discretionary powers by a court of equity is so far from being an objection, that it lies at the very foundation of all equity, and forms its most peculiar and excellent characteristic, as contradistinguished from the strict, precise, and unyielding principles which govern in the courts of common law." 36 Cyc. 549. And "when a contract of which equity has jurisdiction conforms with certain equitable principles, which are quite limited in number, it is as much a matter of course for a court of equity to decree specific performance as for a court of law to give damages for breach of the contract." 36 Cyc. 550. In this case the trial court, after full hearing and due consideration, awarded specific performance. Under the circumstances established by the evidence in this case, I see no reason for interfering with the judgment. In any event the plaintiff should be permitted to recover whatever damages he may have sustained by reason of defendant's failure to carry out the terms of the contract.

BIRDZELL, J., concurs.