[File No. 7040]

E. A. ARHART, Respondent, v. CLARA THOMPSON and Agnes W. Thompson, Appellants.

(31 NW2d 56)

Opinion filed February 11, 1948

*Day, Lundberg & Stokes,* for appellants.
*Burtness & Shaft,* for respondent.

GRIMSON, District Judge. This is an action for specific performance. When it first came before this court it was sent back for further evidence in accordance with § 28–2732 ND Rev Code 1943 and in conformity with the rule laid down in Hettinger County v. Trousdale, 69 ND 505, 288 NW 25. At that time Justice A. G. Burr wrote an exhaustive opinion in Arhart v. Thompson, reported ante, 189, 26 NW2d 523, which became the law of the case. The main question raised and on which the court desired additional evidence was with regard to a deed from the defendant Clara Thompson to the defendant Agnes Thompson claimed to have been executed and delivered before the alleged contract for the purchase of the property by plaintiff from Clara Thompson was consummated and which deed if executed and delivered as claimed would have transferred the property from Clara to Agnes before the said contract between plaintiff and Clara was made. In such case Clara would be unable to perform and specific performance would not be ordered.

The evidence as given in the original hearing in connection with this deed is quite fully set out in the prior opinion. The court there calls attention to some features of the evidence that were not clear, and upon which the court believed further evidence could be produced. At that time Clara did not testify. The deed was not produced. Agnes when asked, "Was your name in the deed when it was given to you?" answered, "Yes, I think it was signed in blank." Q. "It was filled in at the time the dispute with Mr. Arhart arose?" Ans. "Yes." What she meant by that did not seem clear. She was asked, "Do you carry insurance on that? (the house) and she said, "Yes, I do." Q. "Do you know how much you have it insured for?" Ans. "$1700." There was no explanation whether the "you" used in these questions referred to her as owner of the property or as owner of an insurance agency. Other matters hereinafter referred to were raised.

This court was in doubt and could not fully determine from the evidence then given whether there was a transfer of title

to the property in question from Clara to Agnes in January 1944 as claimed.

After the case was remanded to the district court further hearings were had and evidence taken. Clara testified by deposition, more letters were produced and Agnes testified further.

The original deed however was not produced but a certified copy of the record thereof was introduced in evidence. This shows the warranty deed dated January 28, 1944, executed by Clara M. Thompson grantee to Agnes W. Thompson grantor acknowledged on the same date by Clara M. Thompson, a single woman before F. C. Hartson, notary public, recorded in the office of the register of deeds, Grand Forks County, 9th day of October 1945. It was stipulated that the notary had "no memory as to whether or not the name of the grantee was inserted at the time the deed was delivered." The testimony of Agnes is that after the recording of the deed it was lost and could not now be found.

As to what she meant by testifying: "Yes, I think it (the deed) was signed in blank" Agnes now says she did not understand the question, that "I meant she had given me the deed, signed, that I could do whatever I wanted to with the deed. That was what I meant." Q. "You meant your name was not in it?" Ans. "I meant my name was in it." Q. "What did you mean by 'in blank?'" Ans.: "I do not know, Mr. Shaft. I read the testimony that I gave. What I meant was she gave it to me. That is what I meant. That she gave it to me to do whatever I wanted to with the house." . . . Q.: "And is that the usual way in which you use the words, 'Signed in blank?'" Ans.: "Well, I thought it was a little confusing, Mr. Shaft." This testimony does not clarify the prior testimony.

With regard to the insurance policy, Agnes now testifies that at the time the deed was given in January 1944, the property was insured in the name of Clara Thompson; that she did not change that until August 4, 1947, when the policy came up for renewal. Not till that time was she named beneficiary. That was after the first opinion herein. It further appears Agnes never exercised any control over the house prior to Clara's

transaction with the plaintiff. The loan account was still kept in the name of Clara Thompson and the collection of rentals made by the Grand Forks Building and Loan Association to apply on the mortgage Clara had given on the property. Agnes admits that she never claimed to the plaintiff in her conversations with him about the property that she was the owner thereof. She testified that the correspondence she had had with Clara about this property, since the transaction with plaintiff, had been destroyed.

Clara Thompson testifies on this hearing by deposition. She claims that she drew up the deed in question, placed the name of her sister Agnes in it as grantee, signed and acknowledged the deed and delivered it to her sister in January 1944. When asked the purpose of giving this deed to her sister she said, "We had recently sold our home there so I told her that she could just take the house and live in it if she wanted to, and also I wasn't sure whether I would make my home permanent in California, so I thought it would be nice to have some place to go back to in Grand Forks if I should decide to go back. On cross-examination, Q.: "What did you say? (when delivering the deed) Ans.: "Well, I can't say that I exactly remember it word for word, but I told her that I wanted her to have that house and she could do as she wished with it, either live in it or rent it, or words to that effect." Again she testified that she said to her sister, " 'Well, if you want to I will just turn that over to you and you can be responsible for it, pay off the loan that is on there' and so forth and so on", . . . "I told her that I wanted to and would do it" (give it to her). At the same time that she gave the deed to Agnes she also handed her some bonds and life insurance policies, in which Agnes was beneficiary, "to keep them for me until I wrote and asked for them". Clara claims she had no communication with Agnes about this matter until after her negotiations with plaintiff but that all those leters were destroyed.

Clara admits the correspondence with plaintiff introduced in the original hearing and also correspondence she had had with Mr. Rulien, Secretary of the Grand Forks Building and Loan

Association introduced on the second hearing. It seems that in reply to her letter to plaintiff dated September 11, 1945, set out in the original opinion, plaintiff replied on September 14, accepting her offer and enclosing $100 earnest money. On September 20, 1945, Clara wrote to Mr. Rulien:

"I am selling my property on Reeves Drive to E. A. Arhart. . . . The price is $2350.00. He has sent me $100.00 earnest money and I am asking him to pay the balance of $2250.00 to the Assn. The loan balance will have to be paid from this . . . .

Am enclosing the loan account book. Will you have this posted to date and return it to me. . . .

When I have the deed completed I will mail it to you for collection.

If Mr. Arhart wants to take over the insurance policy he will have to pay the unearned premium . . .

To what date have the Pladsons paid the rent? Will you let me leave the money in an optional account?"

Then something happened to interfere with the carrying out of the intention thus expressed. On September 29, 1945, Clara wrote the plaintiff,

"I am returning the $100—not accepted. I have decided not to sell the house. Have been looking at property out here with the thought of investing but find prices so very much inflated; and $2350 for the Reeves Avenue house looks like a very low price. A similar property out here would sell for at least $4000.

If you have incurred any expense let me know and I will promptly remit."

No claim is here made that she was not the owner of the property.

On October 12, 1945, Clara writes Mr. Rulien:

"I presume you know that the house deal is in the air. I sent the deed to Agnes. I understand she has a flock of lawyers working on it. Have turned the whole thing over to her and told her to go ahead. In the meantime I am keeping my fingers crossed, and hoping she comes out on top. . . .

Also will you have the loan record book returned to me. This was not returned when you sent the deed. . . ."

On January 2, 1946, Clara writes to Mr. Rulien,

"I am returning 'the signature card covering the optional account. I believe it wise to have Agnes' name on the account also, so as to eliminate the probate proceedings in case of my death. . . . I have heard nothing about the Arhart matter, so I presume that Pladsons are paying the rent in there and it is being applied on the loan. . . ."

From this evidence it seems clear that there was no change in the actual control of the premises in question at the time of the deed from Clara to Agnes. Agnes does not seem to have taken any interest in the property until after Clara's transaction with plaintiff. She never claimed ownership until after that. The insurance remained in the name of Clara. The account in the Building and Loan Association was continued in the name of Clara and she kept the loan record book. Agnes showed no interest therein but Clara did even to the last letter above quoted. The explanation of Agnes why she testified that the deed was signed "in blank" is not satisfactory but even if Agnes' name was inserted by Clara as vendee while she prepared the deed, her statements in connection with the delivery of the deed to Agnes and her actions subsequent thereto show clearly that she did not intend to transfer title to Agnes at that time. All the evidence indicates that the title was to pass on future contingencies such as sale or death rather than in praesenti.

"The fact that the grantee has obtained possession of a deed does not establish a valid delivery unless the grantor intended to effect delivery." 26 CJS 240. In McGuigan v. Heuer, 66 ND 710, 268 NW 679, this court held: "Whether there was a delivery of a deed depends upon the intention of the grantor, which is mainly a question of fact." See also Cale v. Way, 46 ND 558, 179 NW 921; Cox v. McLean, 66 ND 696, 268 NW 686; Flannery v. Flannery, 99 Neb 557, 156 NW 1065; Goodman v. Andrews, 203 Iowa 979, 213 NW 605; Dolph v. Wortman, 185 Iowa 630, 168 NW 252; Creveling v. Banta, 138 Iowa 47, 115 NW 598.

There was no effective delivery of a valid deed by Clara to Agnes in January 1944. Clara still remained the owner.

The next question for determination therefore is whether

a binding contract was made between Clara Thompson and the plaintiff. From her letter of September 11, 1945, quoted in the former opinion inference can well be drawn that she was offering the property for sale for $2350.00. On September 14, 1945, plaintiff answers as follows:

"Dear Madam:—Your letter of the 11th with offer to sell your house located at 819 Reeves Drive for $2350.00 reached me today and I accept the offer less what ever encumbrance may appear on the abstract or otherwise. Check for $100.00 earnest money enclosed. You no doubt have the abstract which you can deliver to me for examination. As soon as I find the title satisfactory, I will send the deed for your signature and you can send it to the First National Bank or the Grand Forks Building & Loan for collection."

On September 20, 1945, Clara answers as follows:
"Dear Sir:

I have received your letter with the check for $100.00 earnest money on the property at 819 Reeves Drive.

There is a loan on this property with the Grand Forks Bldg. & Loan Association, and the abstract is held by them. I am writing Mr. Rulien, Secretary, and asking him to deliver the abstract to you for examination of title. The balance of $2250.00 can be paid to the Association and I will give them instructions. The loan will have to be paid from the proceeds and the release recorded. This will clear the title as there is no other encumbrance. Taxes are all paid.

You may send me the deed and I will return it to the Building and Loan Association for collection. I will instruct them to pay for the revenue stamps necessary and also for recording the release of mortgage, showing it on the abstract and one certification."

If there is any doubt of Clara's letter of September 11, 1945, being construed as an offer to sell, her letter of September 20, 1945, confirms it as such and fully accepts plaintiff's statements and conditions in his letter of September 14, 1945. She explains the loan and how she is going to take care of it. She directs the delivery of the abstract to plaintiff; she directs him to send a

deed which she will return to the Building and Loan Association for collection as directed by plaintiff. All this is further confirmed by her letter of September 20, 1945, to L. A. Rulien, Secretary of Grand Forks Building and Loan Association heretofore quoted.

Following this the plaintiff called on the Grand Forks Building and Loan Association for the abstract. Mr. Rulien writes Clara on September 25, 1945, as follows:

"Mr. Arhart was in the office this morning and secured the abstract. We have prepared a deed and enclose it herewith for your signature and acknowledgment. We also enclose assignment of the insurance policy as Mr. Arhart stated he would pay the unearned premium. He also stated that he would assume the mortgage at the present time and perhaps pay it up later, so we will have to hold your loan papers here until the loan is paid, when we can surrender them to you."

It is claimed that Mr. Arhart's attempt to assume the mortgage is a variation of the terms stipulated by Clara. It will be noted however that that was after the parties had agreed as shown by the letters of September 11th, 14th and 20th, heretofore quoted and was not made to Clara by the plaintiff. What the plaintiff stated to the Building and Loan Association could not in any way affect Clara's rights as fixed by those letters.

Clara's letter of September 29, heretofore quoted returning the $100.00 to the plaintiff makes no claim that any terms contained in the letters were violated. Plaintiff wrote he would have the abstract examined and if title was found satisfactory he would send the deed. Later he wrote that he had had it examined and that the deed was being sent her for signature and collection. That clearly shows the title was satisfactory.

All the essentials of a contract are contained in the letters between the parties dated September 11, 14 and 20. There was a complete meeting of the minds, a valid subject matter, an agreed consideration and mutuality of agreement and obligation. 17 CJS 310. These letters constituted a completed contract between Clara and the plaintiff mutually enforcible.

Defendant next claims the price of $2350.00 was inadequate and that specific performance should be refused on that ground. There are no fixed standards by which to determine whether inadequacy of consideration in any particular instance is so great as to warrant a denial of specific performance of a contract. Note in 15 Am Dec 300. The old English rule seems to have been that,

"Unless the inadequacy of price is such as shocks the conscience, and amounts in itself to conclusive and decisive evidence of fraud in the transaction, it is not itself sufficient ground for refusing a specific performance." Lord Eldon in Coles v. Trecothick, 9 Ves Jr 246, 32 Eng Reprint 592; Note in 15 Am Dec 300.

This has been somewhat modified in later decisions and especially by the enactment of the codes. Morrill v. Everson, 77 Cal 114, 19 P 190.

Our statute, § 32–0413 ND Rev Code 1943, provides that specific performance cannot be enforced unless there has been "an adequate consideration for the contract." In Beebe v. Hanson, 40 ND 559, 169 NW 31, specific performance was denied when it was found not based on adequate consideration and not in all respects just and reasonable. To the same effect is the holding in Carey v. Campbell, 45 ND 273, 177 NW 372. These seem to be the only North Dakota cases dealing with the adequacy of price. California, however, has the same statutes which have been interpreted by the courts many times. In Cushing v. Levi, 117 Cal App 94, 3 P2d 958, it is held:

" 'Adequate consideration' required in action for specific performance merely means that contract price must be substantially just and fair valuation under all the circumstances."

To that is added in Law v. Title Guarantee & T. Co. 91 Cal App 621, 267 P 565; that adequate consideration "does not mean that the contract price shall necessarily measure up to the highest market value of the property, but merely that it is a substantially just and fair valuation under all the circumstances of the case." To the same effect is the holding in Schader v.

White, 173 Cal 441, 160 P 557. See also O'Hara v. Wattson, 172 Cal 525, 157 P 608; Behler v. Kunde, 100 Cal App 731, 281 P 76. In Boulenger v. Morison, 88 Cal App 664, 264 P 258, the court held:

"Adequate consideration as used in Civ Code, Sec 3391 Subd 1, without which specific performance will not be decreed, does not necessarily mean the highest price obtainable, but a price that is fair and reasonable under the circumstances; it always being peculiarly a question of fact for the trial court to determine in the light of all the facts and circumstances of the particular case."

The majority rule set forth in 65 ALR 86 is: "By the weight of authority, merely that the consideration for a contract is inadequate does not justify a denial of the right to its specific performance, in the absence of any unfairness or overreaching in its procurement." This is supported by a long line of cases cited from many different states. The consideration must be fair and reasonable under all the circumstances of each case. Schader v. White, 173 Cal 441, 160 P 557, supra.

In the case at bar the price agreed upon was $2350.00 for the property in question. Agnes claims it was worth at least $3500.00 basing that on an alleged sale of the property by her shortly after the Arhart transactions. There is no showing whether that purchase price was based on value or on the distressed need of the purchaser for a home. Plaintiff claims that the price fixed was adequate based on the earning capacity of the property and on the price he paid for a somewhat similar house next door. He had tried to buy this house from Clara before she left Grand Forks and had then offered her, Clara says $2000.00; he says $2200.00. He finally accepted the price fixed by Clara. His acquaintance with real estate values was in connection with his purchase of the house adjoining the property in question. He is in the jewelry business. There is nothing unfair or unreasonable shown about the plaintiff's conduct in connection with the transaction. Both Clara and Agnes are experienced businesswomen. Clara had worked many years

for the Building and Loan Association of Grand Forks and after she went to California she worked in the Bank of America. Agnes had many years' experience in the insurance business and was owner of an insurance agency. Clara had been gone from Grand Forks only about eighteen months. During that time she had connections with Grand Forks. In her letter of September 11, 1945, she claims to have heard from a Grand Forks real estate man and also that her sister indicated she might be interested in purchasing the property. Everything shows they are capable and intelligent women. They claimed no mistake in connection with the transaction. The reason for their refusal indicated in Clara's last letter was the rising values of property. There is no great disparity shown in the abilities of the parties.

The house in question is shown to have been at least thirty-eight years old—a five room and bath frame building insured for $1700 renting for $25.00 per month.

Mr. Rulien who is the only witness on value not interested testified the property in September 1945 at the time of this transaction was worth around $2800.00 or $2900.00.

In his memorandum decision the trial court says: "However the difference between $2350 and $2800 is not so great as to warrant the court in refusing to grant specific performance in this case." This finding of the district court is entitled to much weight. Not only did he see and hear the witnesses but he himself lived in Grand Forks and was better able to determine whether this price was fair and reasonable, under all the circumstances. The conclusion of the trial court is supported by the evidence.

Everything considered, the circumstances show the transaction including the price to have been fair and reasonable and specific performance will not be denied because of inadequacy of consideration.

When specific performance has been decreed, a court of equity has the power to adjust the rights of the parties with regard to interest, rents and profits and make complete adjudication of all matters involved in the case. Hunter v. Coe, 12 ND 505,

97 NW 869; Cotton v. Butterfield, 14 ND 465, 105 NW 236; Abrahamson v. Lamberson, 79 Minn 135, 81 NW 768; 58 CJ 1242; Colby v. Street, 168 Minn 57, 209 NW 537; 49 Am Jur 192, Specific Performance, § 170. The district court allowed plaintiff credit on the purchase price for the "rentals accruing on said property since September 25, 1945."

The evidence shows that the plaintiff made a tender of the purchase price on or about October 1, 1945. Such tender however was refused and no deposit of the purchase money was made. Plaintiff has had the use of that money ever since. The district court in his memorandum opinion says that, "It is a matter of common knowledge the price of residence property in Grand Forks increased in value in the fall of 1945, on account of the shortage of dwelling houses." The plaintiff will also get the benefit of that increase in value. On the other hand defendants who have been in possession of the property have had the expense of the upkeep thereof. They have had to pay the insurance, the taxes, and repairs of the property.

This court finds that the most equitable adjustment of this matter is to allow to the defendants rents that have been collected or have accrued on this property up to the time title is finally transferred to the plaintiff.

With that modification the judgment of the district court is affirmed.

CHRISTIANSON, Ch. J., and BURKE and NUESSLE, JJ., concur.

BURR and MORRIS, JJ., did not participate.