2017 ND 20

John BECKSTRAND (deceased) BY AND THROUGH his Personal Representative, Julie BECKSTRAND, Plaintiff and Appellee

v.

Justin BECKSTRAND, James Beckstrand (deceased) by and through his surviving spouse, Cynthia Beckstrand, Defendants and Appellants

Nos. 20160105 & 20160106

Supreme Court of North Dakota.

Filed 2/16/2017

James P. Wang, P.O. Box 211, Minne-waukan, N.D. 58351–0211, for plaintiff and appellee.

Theodore T. Sandberg, P.O. Box 5788, Grand Forks, N.D. 58206–5788, for defendants and appellants.

Sandstrom, Surrogate Judge.

[¶ 1] Justin Beckstrand and James Beckstrand, through his surviving spouse, Cynthia Beckstrand, appeal from a judgment awarding $164,202.40 in 2015 farm rental payments to Julie Beckstrand, the personal representative of John Beckstrand's estate. Because the district court's findings are inadequate to explain the basis for its equitable decision to award the farm rental payments to Julie Beckstrand,

we reverse and remand for the court to explain the rationale for its decision.

## I

[¶ 2] This case involves a family dispute over property located in Benson County. John and Inez Beckstrand were the parents of Julie, James, and William Beckstrand. Justin Beckstrand is James Beckstrand's son and John Beckstrand's grandson.

[¶ 3] In 2001, John and Inez Beckstrand entered into a contract for deed to sell property to Justin and James Beckstrand. In 2007, John and Inez Beckstrand entered into a contract for deed to sell additional property to Justin and James Beckstrand. Annual payments were to be made on November 1 of each year under both contracts for deed. The last payment on the 2001 contract was due November 1, 2015. The last payment on the 2007 contract was due November 1, 2026. Inez Beckstrand died in 2010.

[¶ 4] Justin and James Beckstrand made no annual payments during 2013 and 2014 for either contract for deed. James Beckstrand died in 2013 before John Beckstrand executed a will and died in 2014. John Beckstrand's will provided in relevant part:

> SPECIFIC BEQUEST. At the time of my death, any amount owing on a Contracts or Contract for Deeds which I may have entered into with James Beckstrand and/or Justin Beckstrand, I direct must be paid and divided as follows:
>
> 1. Unpaid payments from James Beckstrand shall be paid to Cindy Beckstrand.
> 2. Unpaid Payments from Justin Beckstrand shall be divided, One half (½) to be paid to my daughter Julie Beckstrand; and one half (½) to be shared equally between my

grandchildren, John Beckstrand, Sandra Beckstrand, Joanna Beckstrand, Justin Beckstrand, Jeremiah White, and Elisha White Miller.

> Time is of the essence in these payments being made. I further direct my personal representative to enforce time is of the essence standards in these payments being made.

[¶ 5] In late 2014, Julie Beckstrand, as personal representative of John Beckstrand's estate, sued Justin Beckstrand and James Beckstrand's surviving spouse, Cynthia Beckstrand, to cancel by action the two contracts for deed. Because the bench trial was scheduled for May 21, 2015, after the spring planting season, the district court allowed Julie Beckstrand to rent the property to the highest bidder, giving Justin and Cynthia Beckstrand the right of first refusal if they met the highest bid. They did so and the district court allowed Justin and Cynthia Beckstrand to rent the property during 2015 for $164,202.40, with the rental payment deposited in Julie Beckstrand's attorney's account pending trial on the cancellation actions.

[¶ 6] The cases were tried together. The district court ruled Justin and Cynthia Beckstrand had defaulted on the contracts for deed. On the basis of John Beckstrand's will, the court found "John set forth a distribution (forgiveness) plan for any amount owed on the two Contracts for Deed. His intent to forgive the debt was clear in the will." The court found "a reasonable redemption period is equitable for the defendants." The court ordered:

> 1. Defendants shall pay the personal representative for the 2013 payments on each Contract for Deed plus noted interest from November 1, 2013, to present,

all within 90 days of judgment being entered.

2. Upon timely payment of the amounts due in paragraph #1, the remaining debt amounts of the 2001 Contract for Deed are forgiven for both Defendants, under the language found on page 3 of the contract.

3. Upon timely payment of the amounts due in paragraph #1, the remaining amount of the 2007 Contract for Deed owed by the James Beckstrand estate shall be forgiven under the special bequest language of the will. Cynthia Beckstrand shall receive her share of the property described in the 2007 Contract for Deed, and shall owe no further payments.

4. Upon timely payment of the amounts due in paragraph #1, the special bequest language of the will controls as to Justin Beckstrand's 2007 Contract for Deed debt. He shall pay his remaining ½ share of the 2007 Contract for Deed debt (principal plus all interest) to the estate of John Beckstrand for division as follows:

> Unpaid payments from Justin Beckstrand shall be divided one half (½) to be paid to Julie Beckstrand and one half (½) to be shared equally between Sandra Beckstrand, Joanna Beckstrand, Justin Beckstrand, Jeremiah White, and Elisha White Miller.

This payment to be made within 120 days of entry of judgment. Since Justin is entitled to ⅙th of the unpaid payments, he may reduce his total payment by his ⅙th share. As for any remaining payments owed by the Estate of James Beckstrand or Cynthia Beckstrand for their ½ share on the 2007 Contract for Deed, are deemed forgiven and waived upon payment under the terms and conditions of Paragraph #1 of these Findings.

5. Any issues relating to the payment of any real estate tax payments for 2013 and 2014 have been resolved.

6. Upon timely payment of all debts, warranty deeds shall be issued by the personal representative of the estate, at the expense of the Estate.

7. The money paid to farm the disputed properties in 2015 was remedial for all parties so is not credited or deducted from the Contracts for Deed obligations herein. The estate may keep these funds located in Mr. Wang's trust account.

8. Based on the default, defendants are responsible for plaintiff's reasonable attorney's fees, which are found to be $11,841.75, plus whatever reasonable additional fees were incurred between September 18, 2015 and December 18, 2015.

Judgment was entered on January 28, 2016.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Justin and Cynthia Beckstrand's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 8] The only issue raised by Justin and Cynthia Beckstrand in this appeal is whether the district court erred in failing to award them the 2015 payment they made to rent the land while the cancellation actions were pending.

[¶ 9] Their argument begins with the proposition that, when there is a contract for deed, the vendee is the equitable owner while the vendor holds the legal title as security for his claim, see, e.g., Johnson v. Finkle, 2013 ND 149, ¶ 18, 837 N.W.2d 132; Woodward v. McCollum, 16 N.D. 42, 49, 111 N.W. 623, 626 (1907), and

therefore they are practically in the same position as a mortgagor and mortgagee. See, e.g., In re Faiman, 70 B.R. 74, 76 (D. N.D. 1987); Zent v. Zent, 281 N.W.2d 41, 45 (N.D. 1979); United Accounts, Inc. v. Larson, 121 N.W.2d 628, 634 (N.D. 1963). Justin and Cynthia Beckstrand argue the mortgage foreclosure statutes therefore apply, and because N.D.C.C. § 32–19–06 states the debtor is entitled to the rents during the redemption period, they are entitled to the 2015 rental payments. We disagree for several reasons.

[¶ 10] First, this Court has said N.D.C.C. § 32–19–06 applies only to actions for foreclosure of mortgages and land contracts. See Kautzman v. Kautzman, 2003 ND 140, ¶ 25, 668 N.W.2d 59. An action to foreclose a land contract is one of three distinct methods for cancelling a contract for deed, the other two being cancellation by a statutory proceeding and cancellation by action. See, e.g., Langenes v. Bullinger, 328 N.W.2d 241, 245 (N.D. 1982); J. Leahy, Cancellation of Land Contracts, 32 N.D. L. Rev. 5 (1956). Foreclosure or statutory cancellation actions are necessarily controlled by statutes. See, e.g., Bendish v. Castillo, 2012 ND 30, ¶¶ 7–9, 812 N.W.2d 398, and cases collected therein. Cancellation of a contract for deed by action, however, is an action in equity, and this Court will not interfere with the district court's decision on equity unless an abuse of discretion is clearly established. Id. A court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination. Id. at ¶ 9. Justin and Cynthia Beckstrand acknowledge that these cases are cancellations by action. They cite no cases applying the mortgage foreclosure statutes to cancellation by action. The mortgage foreclosure statutes do not apply.

[¶ 11] Second, cancellation by action is not subject to a statutory period of redemption, and a court does not necessarily abuse its discretion by refusing to allow a right to redeem. See, e.g., Johnson v. Mark, 2013 ND 128, ¶¶ 31–32, 834 N.W.2d 291, and cases collected therein. Here the court decided after trial to allow 90– and 120–day redemption periods from the date of entry of judgment. Even if a mortgage debtor is statutorily entitled to rents during the redemption period, the redemption period began in January 2016 when judgment was entered, after the 2015 crop year had ended.

[¶ 12] Third, although Justin and Cynthia Beckstrand argue the 2015 rental payments awarded to Julie Beckstrand are a "money judgment" that cannot be awarded in a cancellation of land contract case, see Langenes, 328 N.W.2d at 246, this award was not a money judgment related to amounts owing under the contracts for deed but was a distribution of rents collected during the pendency of the action. "Generally, a grantor who is entitled to the cancellation of a deed is also entitled to the fair rental value of the property, or the rents and profits of the land, for the time that the grantee was wrongfully in possession, including rents collected by the defendant while in possession and those accruing during the pendency of the suit." 12A C.J.S. Cancellation of Instruments § 178, p. 657 (2015) (emphasis added; footnotes omitted). In an equitable action, "a court of equity has the power to adjust the rights of the parties with regard to interest, rents and profits and make complete adjudication of all matters involved in the case." Arhart v. Thompson, 75 N.D. 569, 579, 31 N.W.2d 56, 62 (1948). The district court had discretion to weigh the equities in deciding which of the parties was entitled to the rental payments.

218

[¶ 13] A district court's findings of fact, however, must be "adequate to understand and explain the basis for its decision." Romanyshyn v. Fredericks, 1999 ND 128, ¶ 8, 597 N.W.2d 420. In its written findings and conclusions, the court simply said the rental payment "was remedial for all parties" and the "estate may keep these funds." In its oral findings, the court said:

THE COURT: Well, because of the timing, it appeared to me that I wanted to avoid the waste of this land not being utilized....

And the complaints alleged default and it appears they were in default at the time of that awarding of a contract to farm the land in 2015. It was affirmed by me after trial.

It was open to bidders and the defendants had a choice to bid or not bid to farm the land; they chose to. They were able to harvest the ... crops and make a profit.

It appears to me to be separate and not part of the action that was going on; and, as such, the $164,000 is awarded to the plaintiff.

[¶ 14] This reasoning does not explain why the district court awarded the rental payments to one party over another, and makes it impossible for us to perform our appellate function. See Empower the Taxpayer v. Fong, 2013 ND 187, ¶ 7, 838 N.W.2d 452. We therefore reverse and remand for the court to explain the rationale for its decision. See, e.g., Gratech Co., Ltd. v. Wold Eng'g, P.C., 2007 ND 46, ¶ 20, 729 N.W.2d 326. The court may make any additional adjustment of the rights of the parties it considers equitable.

III

[¶ 15] The judgment is reversed and the case is remanded for further proceedings.

[¶ 16] Dale V. Sandstrom, S.J.

I concur in the result.

Gerald W. VandeWalle, C.J.

[¶ 17] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.

Crothers, Justice, concurring and dissenting.

[¶ 18] I concur in the result. But I respectfully dissent from the majority's dispositive legal holding. I agree we must reverse, but for a far different reason than expressed by the majority. I agree we must remand, but also for a far different reason than held by the majority.

[¶ 19] The majority correctly concludes that mortgage foreclosure statutes controlling ownership of rentals do not apply. Majority, at ¶ 9. The majority also correctly concludes that a district court does not err as a matter of law in not permitting a redemption period in every case. Majority, at ¶ 10. I respectfully submit that the majority does not correctly conclude the district court had discretion to decide which party was entitled to the rental payments for the time the purchasers were lawfully in possession of the land. See Majority, at ¶ 11.

[¶ 20] The majority reverses the district court's award of the 2015 rental payment to the property seller. Id. at ¶¶ 11, 13. I agree that holding must be reversed. However, the majority remands for the district court to explain why it awarded the $164,202.40 rental payment to one party rather than the other. Id. at ¶ 13. I would remand for the district court to enter judgment for the purchasers because, as a matter of law, they are entitled to receive the payment for rental of the property

they lawfully possessed during the 2015 growing season.

[¶ 21] The outcome here is controlled by both the holding and the underlying rationale in Nearing v. Coop, 6 N.D. 345, 70 N.W. 1044 (1897). Although an old case, the rationale and its underpinnings remain sound. See Johnson v. Finkle, 2013 ND 149, ¶ 17, 837 N.W.2d 132. There, Nearing was purchasing farmland from New England Mortgage Security Company on a contract for deed executed in 1891. Id. Nearing grew crops on the land and performed his obligations under the contract in 1892, 1893 and 1894. Id. In 1895 Nearing failed to make his land payment or pay taxes, thereby defaulting under terms of the contract. Id. at 1044–45.

[¶ 22] In April of 1895 New England Mortgage rented the land to Coop. Id. Nearing objected and advised Coop that he owned the land that was being financed under a contract for deed, Nearing and Coop subsequently agreed that Coop would pay Nearing to rent the land for the 1895 growing season. Id. at 1045. Coop farmed the land during the 1895 growing season but did not pay Nearing any rentals. Id. Nearing sued Coop to recover the unpaid rentals. New England Mortgage intervened as a defendant. Id. This Court held Nearing was entitled to recover the unpaid rentals from Coop because Nearing was entitled to "treat the land as his own." Id. at 1046.

[¶ 23] The Court first noted Nearing was in default at the time of the transaction with Coop. Id. at 1044. The Court dismissed any significance of Nearing's default on his ability to recover rentals from Coop, holding:

> "But we regard the existence or nonexistence of default under the contract of purchase as entirely immaterial for the purposes of this action. It has been frequently held that where land is conveyed by contract specifying the time and manner of future payments therefor, which the grantee undertakes to make, the grantor agreeing that, upon the making of such payments, he will convey to the grantee by deed, the grantee at once upon the execution of the contract becomes the equitable and beneficial owner thereof, and that the grantor holds the legal title in trust for the grantee, and as his security for the performance of the covenants on the part of the grantee."

Id. at 1045 (emphasis added).

[¶ 24] The Court further held that, as long as the contractual relationship between the vendor and vendee existed and Nearing was in possession of the land, "Nearing[ ] was entitled to treat the land as his own, to crop or rent the same as he might see proper, and, if rented, was entitled to receive or recover the rent therefor." Id. at 1046.

[¶ 25] Here, the district court conducted a hearing on April 10, 2015, to address utilization of the disputed property during the 2015 crop year. On April 14, 2015, the court issued its order that the property should be rented on bids with the contract for deed purchasers having a "right of first refusal" to match the highest third-party bid. Purchasers did that and deposited $164,202.40 with the seller's attorney. Trial was held on May 21, 2015, and the district court made its findings of fact, conclusions of law and order for judgment on September 18, 2015. Those findings, conclusions and order were amended on January 19, 2016. Judgment was entered on January 28, 2016.

[¶ 26] Under the facts of this case and the law provided in Nearing v. Coop, the purchasers were the legal owners entitled to the use, profits and rentals from the property until at least when their pay-

ments were due 90 days and 120 days after entry of the district court's judgment. As the purchasers and owners, they, and not the estate as the seller and contract for deed vendor, were entitled to rentals for the 2015 growing season.

[¶ 27] Rather than comport with this law and outcome, the majority relies on a general legal encyclopedia and a North Dakota specific performance case that generally describes a court's equitable powers. Neither are controlling and both should be viewed as unpersuasive.

[¶ 28] The majority cites the encyclopedia Corpus Juris Secundum for the proposition that a party suing to cancel a deed generally can recover rents and profits from the land. Majority, at ¶ 11. Unsaid is that the article relates to the cancellation or rescission of a conveyance. 12A C.J.S. Cancellation of Instruments §§ 1–2, p. 497 (2015). Within the article, rescission and cancellation have the same meaning, which is to nullify the underlying agreement. Id. at § 3. North Dakota has long recognized that rescission unwinds the transaction and requires that parties be placed back into their pre-contracting positions as if the transaction did not occur. Raymond v. Edelbrock et al., 15 N.D. 231, 107 N.W. 194, 195 (1906) ("Rescission of a contract is the act of canceling it by restoring the conditions existing immediately before it was made. Rescission is effected by each party returning to the other what has been received pursuant to the contract or its equivalent."). In that circumstance, logic dictates that a seller rather than a purchaser would be entitled to rents and profits from the land at issue because the sale is being nullified. Here, the transaction is not being rescinded; rather the seller is attempting to foreclose the contract for deed. In this action the contract is being enforced; not rescinded. Therefore, the CJS citation is unhelpful.

[¶ 29] The majority also cites Arhart v. Thompson, 75 N.D. 569, 579, 31 N.W.2d 56, 62 (1948), for the proposition that "a court of equity has the power to adjust the rights of the parties with regard to interest, rents and profits and make complete adjudication of all matters involved in the case." Majority, at ¶ 11. However, that general statement was made in an action to specifically enforce a contract for the sale of real estate. 75 N.D. 569, 31 N.W.2d at 57. The Court ultimately held the purchaser was entitled to specifically enforce the purchase contract, and the statement was made to describe the conflicting equities when, during pendency of litigation, the seller had possession of the purchaser's tendered purchase payment and rentals generated from the property but also had expenses for taxes, insurance and upkeep of the property. Id. at 62. In that context, the Court in Arhart held, "This court finds that the most equitable adjustment of this matter is to allow to the defendants rents that have been collected or have accrued on this property up to the time title is finally transferred to the plaintiff." Id.

[¶ 30] The statement of a court's exercise of general equitable authority in a specific performance case has little or no sway in this contract for deed foreclosure action. And, to the extent the district court might have equitable discretion in a contract for deed foreclosure action, that discretion is regulated by judicial decisions made directly in the context of contract for deeds. One such holding is Nearing v. Coop, extensively discussed above. The Nearing holding clearly directs that a contract for deed purchaser is entitled to rents and profits, just as a full legal owner would be entitled. Applied to this case, Justin Beckstrand and James Beckstrand, through his surviving spouse Cynthia Beckstrand, are entitled to rentals from

the 2015 growing season and I would remand for entry of judgment accordingly.

[¶ 31] Daniel J. Crothers

Kapsner, Justice, dissenting.

[¶ 32] I respectfully dissent. I would reverse and direct the district court to amend the judgments in Case No. 03–2014–CV–00090 and 03–2014–CV–00089 to provide the money paid to farm the disputed properties in 2015 and placed in Mr. Wang's trust account was remedial between the parties during the pendency of the case and, in the event of redemption under the terms of the judgment, must be returned to the payors.

[¶ 33] There are two problems with the district court's decision to unconditionally allow the estate to retain the money paid by Justin and Cynthia Beckstrand to rent the land during the 2015 growing season: 1) the district court did not cancel the contract, but instead allowed a period of redemption, and 2) it is contrary to the express intent of the testator who had made provision in his will for payments under the contracts for deeds. Those provisions are the other payments ordered under the judgments.

[¶ 34] In paragraph 12, the majority notes the general rule that a grantor who is entitled to the cancellation of a deed is also entitled to the fair rental value of the property, or the rents and profits of the land, for the time that the grantee was wrongfully in possession, including rents collected by the defendant while in possession and those accruing during the pendency of the suit. But this right of the grantor does not apply here, because ultimately it was determined by the court that the grantor was not entitled to cancellation; rather, the grantee was entitled to redeem the property.

[¶ 35] "Cancellation of a contract for deed by action is an action in equity." Moch v. Moch, 1997 ND 69, ¶ 19, 562 N.W.2d 558. I acknowledge that during the pendency of an equitable proceeding the district court has "the power to adjust the rights of the parties with regard to interest, rents and profits and make complete adjudication of all matters involved in the case," as asserted in paragraph 12 of the majority opinion, citing Arhart v. Thompson, 75 N.D. 569, 579, 31 N.W.2d 56, 62 (1948). See also Bendish v. Castillo, 2012 ND 30, ¶ 9, 812 N.W.2d 398. At the time the district court entered its order requiring payment in order to farm the property for the 2015 growing season, it was asserted that the grantee was in default and no decision had been made on cancellation. That interim decision to maintain the equities pending the ultimate decision, however, does not permit the district court to make a final decision that is inconsistent with its determination on cancellation or with the testator's intent.

[¶ 36] Johnson v. Finkle, 2013 ND 149, ¶ 17, 837 N.W.2d 132, contains a succinct statement of the law on contracts for deed:

Under a contract for deed, the vendor retains the legal title to the property and holds it in trust for the purchaser and as security for the purchaser's compliance with the conditions of the contract. See Security State Bank of Hannaford v. Harrington, 452 N.W.2d 72, 74 (N.D. 1990); Farmers State Bank v. Slaubaugh, 366 N.W.2d 804, 807 (N.D. 1985); Zent v. Zent, 281 N.W.2d 41, 45 (N.D. 1979); Sadler v. Ballantyne, 268 N.W.2d 119, 124 (N.D. 1978); United Accounts, Inc. v. Larson, 121 N.W.2d 628, 632–33 (N.D. 1963); In re Ryan's Estate, 102 N.W.2d 9, 14 (N.D. 1960). The purchaser holds equitable title and generally has the right to the use and possession of the property. See Slaubaugh, at 807; Zent, at 45; United Ac-

counts, at 632–33; Ryan's Estate, at 14. The equitable title merges in the legal title when the terms of the contract for deed have been completed and the warranty deed is entered. United Accounts, at 633. The full title in fee simple does not vest until the entire purchase price is paid and the terms of the contract have been met. Zent, at 45. The subsequent conveyance under the warranty deed after the terms of the contract for deed have been met does not create a new right, but rather perfects the right existing under the contract and gives effect to the parties' intent by perfecting title relating back to the date of the contract. Ryan's Estate, at 13–14.

By not cancelling the contract, but allowing for redemption, the district court recognized Justin Beckstrand's right to the use and possession of the property, conditioned upon his payment of the redemption costs. Therefore, if redemption occurs, an additional payment for the right to rent the property would be inconsistent with his existing interests under the contract for deed.

[¶ 37] As noted in paragraph 4 of the majority opinion, the will of John Beckstrand made a specific bequest for the contracts for deed. Paragraphs 1 through 6 of the district court's order, as recited in paragraph 6 of the majority opinion, reflected that disposition. Only paragraph 7 of the district court order, which allowed the estate to keep the rental payment regardless of redemption, was inconsistent with the remaining provisions.

[¶ 38] Section 30.1–01–02 of the Uniform Probate Code notes that its underlying purpose and policy is "[t]o discover and make effective the intent of a decedent in distribution of the decedent's property." Except for paragraph 7 of its order, the district court has given effect to the express intent of John Beckstrand with regard to the contracts for deed. I would reverse and direct the district court to amend its judgments to make the provisions of paragraph 7 conditional upon the failure of Justin Beckstrand to redeem to the property.

[¶ 39] Carol Ronning Kapsner

Lisa Fair McEvers