MARK v. BRADFORD.

1. QUIETING TITLE—CLOUD ON TITLE—NOTICE OF OIL AND GAS ROY-
ALTY POOL CONTRACT—EVIDENCE.

In suit by grantees under a warranty deed for valuable con-
sideration to have a cloud removed from their title to 160
acres of land, record justified finding of trial judge that at
time plaintiffs received title they had no notice, either actual
or constructive, that prior to the date of their deed their
grantor had entered into an oil and gas royalty pool contract
with defendants then or thereafter to be discovered and pro-
duced from the premises, hence plaintiffs· were innocent pur-
chasers for value.

2. SAME—CLOUD ON TITLE—RECORDING—OIL AND GAS ROYALTY POOL
CONTRACT.

In suit to remove oil and gas royalty pool contract as cloud
upon title of plaintiffs, who received title before recording of
such contract, the issue is not whether the contract was invalid
but whether it was valid and binding as against plaintiff in-
nocent purchasers of the land for value.

3. SAME—OIL AND GAS ROYALTY POOL CONTRACT—WARRANTY DEED—
INNOCENT PURCHASERS FOR VALUE.

Daughter and son-in-law of elderly grantor of 160 acres of land,
who agreed to discharge mortgages against premises and to
provide him with a good home, clothing, necessary nursing,
medical attention, hospitalization· and funeral expenses and
received from him a warranty deed without knowledge of the
fact that he had shortly theretofore entered into an oil and
gas royalty pool contract, hold title to the land as innocent
purchasers for value rather than as heirs at law so far as con-
tract is concerned.

4. MINES AND MINERALS—TITLE PASSES WITH UNRESTRICTED WAR-
RANTY DEED.

Minerals not yet captured or removed from the ground are a part
of the land in or beneath which they are located and normally
pass with an unrestricted warranty deed of the fee title to
an innocent purchaser for value.

5. SAME—ROYALTIES IN RECOVERED MINERALS ARE PERSONALTY.
   An interest or right in royalties incident to recovered minerals is personalty, not an interest in land.

6. SAME—UNACCRUED ROYALTIES ARE INCORPOREAL HEREDITAMENTS.
   While vested in the owner' of the land, unaccrued royalties in minerals are of the nature of incorporeal hereditaments and, as such, are an interest in land.

7. SAME—CONTRACTS—DEEDS—INTEREST IN LAND.
   Contracts and deeds for the conveyance of unaccrued oil and gas royalty interests either under an existing or future lease, in connection with a lease with proportionate interest in the minerals in place, or a perpetual nonparticipating royalty interest created before or after a lease, are governed by the same principles of law as those governing ordinary contracts for and conveyances of interests in land.

8. SAME—UNACCRUED RENTS AND OIL ROYALTIES—DESCENT AND DISTRIBUTION.
   Unaccrued rents and oil royalties pass to land owner's heirs and not to his personal representatives.

9. SAME—OIL LEASE FOR DURATION OF PRODUCTION—PROFIT A PRENDRE.
   An operating lessee under a lease for a term of years, or for a term of years and so long as oil shall be produced in paying quantities, has an interest or estate in real property in the nature of a profit *a prendre*, which is an incorporeal hereditament.

10. SAME—ASSIGNMENT OF ROYALTY—INTEREST IN OIL RIGHTS.
    The assignee of a royalty interest in oil rights under an assignment by the land owner has an interest or estate in real property in the nature of an incorporeal hereditament.

11. SAME—ACCRUED ROYALTIES—CHOSES IN ACTION.
    Accrued royalties for oil and gas are a mere chose in action, therefore, personal property.

12. SAME—OIL AND GAS LEASE—ROYALTIES RESERVED.
    If an oil and gas lease is for a term of years expiring at a certain time, it is a chattel real, and the severed royalty would be personal property; but where the lease may endure for an indeterminate period, it creates an estate in the nature of a qualified fee, and the royalty reserved would be an interest in realty.

13. SAME—ROYALTIES—REVERSION—MORTGAGES.

Since an unaccrued royalty in mineral rights is incident to the reversion, a mortgage, executed by a mortgagor who owns both the royalty and the real estate, includes the royalty.

14. SAME—UNACCRUED ROYALTIES—STATUTE OF FRAUDS—SEVERANCE OF ROYALTY INTEREST FROM LAND.

Since unaccrued royalties constitute an interest in land, they are within the statute of frauds, and cannot be alienated other than by an instrument in writing, but after the royalty interest in the oil has been severed from the land, it becomes personal property.

15. QUIETING TITLE—CLOUD ON TITLE—IMPAIRMENT OF VALUE—OIL AND GAS ROYALTIES.

Where instrument under which defendants claim title to an interest by way of unaccrued royalties in oil and gas in real estate owned by plaintiffs does not entitle them to an interest therein, impairs the value of plaintiffs' title and circuit court has jurisdiction, plaintiffs are entitled to decree removing such cloud from title to their land.

Appeal from Osceola; Neal (Max E.), J. Submitted April 10, 1946. (Docket No. 13, Calendar No. 43,252.) Decided June 3, 1946.

Bill by James D. Mark and wife against Robert J. Bradford and others to remove cloud from title. Decree for plaintiffs. Defendants appeal. Affirmed.

*Worcester & Worcester* and *Linsey, Shivel, Phelps & Vander Wal,* for plaintiff.

*E. J. Millington* and *Forrest Washburn* (*Campbell & Campbell,* of counsel), for defendants.

NORTH, J. By their bill of complaint plaintiffs sought to have a cloud removed from their title to a parcel of land containing approximately 160 acres in Rose Lake township, Osceola county. After hearing on the merits decree was entered granting the above relief. Defendants have appealed.

William Howe, now deceased, was the father of plaintiff, Mrs. Pearl Mark. On April 22, 1942, he, a widower, was the owner of the parcel of land involved in this suit. At that time he was the sole occupant of the premises, at least so far as appears from the record no other member of the family resided with him; and on the date mentioned he entered into a contract which may be designated as an oil and/or gas royalty pool contract, hereinafter referred to as exhibit 4. This was a three-party agreement in which William Howe was designated as the first party, defendants Robert J. Bradford and Harry Werner, trustees, parties of the second part, and defendant Robert J. Bolger party of the third part. The other defendants are property owners who have entered into like pool agreements. By the terms of the contract the property owners pooled 50 per cent. of their royalty interests in such oil and gas as might be produced on their respective lands. The contract provided that the parties of the second part should complete the formation of a pool including at least 1,000 acres in Rose Lake township. And in event oil or gas was discovered and produced in commercial quantities upon any of the lands in the pool the trustees were to cause a Michigan corporation to be formed and known as the Rose Lake Royalty Pool, Inc. For decision herein, it is sufficiently accurate to say that each of the land owners in the pool was to have a no par value share of stock for each acre of his land included in the pool; and that 25 per cent. of the stock in the corporation was to become the property of defendant Bolger, party of the third part in the agreement. The contract provided:

"The first parties (party) do (does) hereby transfer, sell, assign and set over unto the second party as trustees, an undivided one half royalty interest

in all oil or gas now or hereafter discovered and produced from the real estate above described. * * * Nothing in this contract contained shall be construed as vesting in the second or third parties or their assignees, any right, title or interest in the lands hereinbefore described, or in any rentals or bonuses paid under any lease covering said lands, or any part thereof, in excess of the undivided one half interest in the oil actually produced from said lands and specifically assigned hereby.''

After entering into the above contract William Howe continued to live alone on the land with the exception of brief intervals until January 2, 1943, when he went to Grand Rapids with the plaintiffs with whom he resided until his death on January 26, 1943, at the age of 77 years. It fairly appears from the record that the change of residence of William Howe was necessitated by his advanced age and his weakened condition due to cold and exposure at his farm residence and from lack of food and care. About the time he went to Grand Rapids with his daughter Pearl there were conferences or talks between her and other children of William Howe as to how he should be cared for. It was finally arranged that he should reside with plaintiffs. An agreement was entered into between William Howe and plaintiffs whereby in consideration of his conveying to plaintiffs the 160-acre parcel involved in this suit and transferring to them practically all of his personal property, which was of comparatively small value, plaintiffs entered into a written contract to assume and pay the mortgage on the farm premises, to provide the father ''with board and lodging, a good home and a place to stay during the lifetime of first party (William Howe), in the home of said second parties,'' to furnish the first party clothing, any necessary care or nursing, medi-

cal attention, hospitalization, and to defray funeral expenses upon the death of the first party. At the time of consummating this agreement the farm property was subject to two mortgages, leaving a comparatively small equity as the value of the property was then understood to be—oil or gas not yet having been discovered in the immediate vicinity. The conveyance to plaintiffs was dated January 20, 1943, and recorded two days later. It was a warranty deed; and while it contained reference to another oil lease not directly involved in this suit, no reference was made in the deed or simultaneous contract to the instrument under which defendants are asserting rights in the instant case.

Very shortly after conveying the farm property to plaintiffs William Howe died. The contract which plaintiffs entered into incident to obtaining the deed was fully performed including satisfaction of the two mortgages on the farm property. While there was something of a conflict in the testimony bearing on that issue, the trial judge found that at the time plaintiffs received title to the farm property they had no knowledge or notice, either actual or constructive, that prior to the date of their deed William Howe had entered into the royalty pool contract involved in this suit. Under the record before us we would not be justified in disturbing the finding of the circuit judge; but on the contrary we are of the opinion that the finding is justified by the record. On the basis of the foregoing finding the trial judge entered a decree that exhibit 4, which was not of record at the time the property was deeded to plaintiffs, "be and the same is hereby declared void as against the plaintiffs, or their heirs or assigns, and the same is hereby set aside, vacated and declared absolutely null and void as against plaintiffs * * * as a cloud upon the title of

plaintiffs, and that said defendants above named in the title of this cause, deliver up the said instrument to be canceled by the clerk of this court;" and further that plaintiffs' title was "free and clear from all clouds and irregularities, interests or claims" of the character herein asserted by defendants.

Appellants' contention is that they do not and never have claimed to have any interest in the lands deeded by William Howe to plaintiffs; but instead that the pool agreement, exhibit 4, provided only for a transfer or assignment of an interest in personalty—*i.e.,* "an undivided one half royalty interest in all. oil and/or gas now or hereafter discovered and produced from the real estate above described." And appellants assert that since the pool agreement had to do only with rights in personal property it is valid and enforceable against plaintiffs notwithstanding the agreement was not of record and notwithstanding plaintiffs, as the trial court found, were innocent purchasers for value of the real estate described.

Even though it be assumed that the pool agreement did not purport to transfer or convey an interest in real estate as between the original parties, we are of the opinion that under the circumstances of this case that phase of the law alone is not decisive. Subsequent to the conveyance of the farm property to plaintiffs they first became aware that William Howe had entered into the pool agreement. The bill of complaint alleges that defendants or some of them "have threatened to record said agreement or conveyance executed by said William Howe, and thus create a cloud upon the title of these plaintiffs." While the instrument had not actually been recorded at the time the bill of complaint was filed, it was recorded prior to the time defendants answered and such recording is admitted by defend-

ants in their answers. As we view the record, finding as we do that plaintiffs are innocent purchasers for value of the land in question, two issues are presented for determination: (1) Is the pool agreement effective and binding as against the rights of the plaintiffs; and (2) If the pool agreement is not effective and binding as against plaintiffs' rights in the farm property, does the record of the pool agreement constitute a cloud on plaintiffs' title to the farm property?

In our opinion appellants have inaccurately stated plaintiffs' contention or at least inaccurately stated the position taken by the trial court. On numerous occasions in appellants' brief it is asserted in substance that plaintiffs contend that the pool agreement was invalid and did not constitute a lawfully binding contract. We think the real issue presented is only whether the pool agreement is valid and binding *as against plaintiffs,* who are innocent purchasers of the land for value. That is the extent of the trial court's decision. It does not follow that the decree entered in the circuit court was erroneous merely because the pool contract was· (as defendants assert) valid as between the original parties; and perchance because of his breach of the contract, if valid in law, defendants might have had an action for damages against William Howe in his lifetime, or after his demise a claim against his estate. The question is: Have defendants any rights herein asserted which are valid and enforceable against plaintiffs as innocent grantees of title conveyed for value by warranty deed? Appellants have cited many cases wherein the controversy involved the rights of heirs, devisees or representatives of a party who had made a valid contract in his lifetime. Obviously such decisions are not controlling in the instant case for the reason that such heirs,

et cetera, stand in the shoes of the contracting party through whom their rights are derived; but that is not true of plaintiffs who are innocent purchasers for value.

Minerals are a part of the land in or beneath which they are located; and normally they pass with an unrestricted conveyance of the fee title. *Jaenicke* v. *Davidson*, 290 Mich. 298. As many cases hold, an interest or right in royalties incident to recovered minerals is personalty, not an interest in land. Nonetheless when the minerals to which royalty rights pertain have not yet been captured or removed from the ground, and in the meantime an innocent purchaser for value becomes possessed by an unrestricted warranty deed of title to the land where the minerals rest, plain justice and security of title to lands necessitate the holding that the minerals and the profits or royalties to be derived therefrom pass to the land purchaser. To hold otherwise would, in this type of case, impair and practically nullify the purpose and reliability of recorded titles.

In the instant case plaintiffs' rights must be adjudicated in the light of the fact that at the time title to the land was conveyed to them no royalties had accrued. In other words, we are here dealing with unaccrued oil and gas royalties, and in a controversy between parties one of whom is the owner of the land, as distinguished from contending parties neither of whom has rights in the mineral lands. Further, the instrument under which defendants assert royalty rights is one which, if valid as against plaintiffs, would be effective for an indeterminate period. While vested in the owner of the land, unaccrued royalties are of the nature of incorporeal hereditaments and as such are an interest in land.

"Since an unaccrued oil and gas royalty interest, whether it is a royalty under an existing lease only,

a royalty interest under an existing lease together with a proportionate interest in the minerals in place, a royalty interest under .existing and future leases, or a perpetual nonparticipating royalty interest created before or after a lease, is everywhere held to be real property and an interest in land, the principles of law governing 'contracts and deed for the conveyance of such interests are the same as those governing ordinary contracts for and conveyances of interests in land.'' 3 Summers Oil & Gas (Perm. Ed.), p. 465.

''The rents and (oil) royalties were profits issuing out of the land. When they accrued, they became personal property; but rents and royalties to accrue were a part of the estate remaining in the lessor. As such, they would pass to his heirs, and not to his personal representatives.'' *United States* v. *Noble,* 237 U. S. 74 (35 Sup. Ct. 532, 59 L. Ed. 844).

''An operating lessee under a lease for a term of years, or for a term of years and so long as oil shall be produced in paying quantities, has an interest or estate in real property in the nature of a profit *a prendre,* which is an incorporeal hereditament; *and the assignee of a royalty interest in oil rights under an assignment by the land owner also has an interest or estate in real property in the nature .of an incorporeal hereditament.''* *Callahan* v. *Martin* (syllabus), 3 Cal. (2d) 110 (43 Pac. [2d] 788, 101 A. L. R. 871).

''There seems to be some confusion in the decisions in failing to distinguish between accrued and unaccrued royalties, but it is clear from all of the decisions that ordinarily accrued royalties, strictly speaking, are a mere chose in action, and therefore personal property. But according to Mills-Willingham on the Law of Oil & Gas, p. 179, unaccrued royalties are a part of the estate remaining in the lessor, and as such pass to the heirs, and are therefore an interest in land.  *  *  *  If the

oil and gas lease is for a term of years expiring at a certain time, it is a chattel real, and the severed royalty would be personal property; but where the lease may endure for an indeterminate period, it creates an estate in the nature of a qualified fee, and the royalty reserved would be an interest in realty." *Arrington* v. *United Royalty Co.,* 188 Ark. 270 (65 S. W. [2d] 36; 90 A. L. R. 765).

"In *McIntire's Adm'r* v. *Bond,* 227 Ky. 607 (13 S. W. [2d] 772, 64 A. L. R. 630), we held oil royalty to be an incorporeal hereditament issuing out of land and that unaccrued oil royalty is incident to the reversion and passes with it. Since unaccrued royalty is an interest in the real estate, it follows that a mortgage executed on land in which the mortgagor owns both the royalty and the real estate includes the royalty." *Williams' Adm'r* v. *Union Bank & Trust Co.,* 283 Ky. 644 (143 S. W. [2d] 297; 131 A. L. R. 1364).

"It is now adjudicated that such royalties constitute an interest in land, are within the statute of frauds, and cannot be alienated other than by an instrument in writing; and are subject to the registration laws. *Sheffield* v. *Hogg,* 124 Tex. 290 (77 S. W. [2d] 1021, 80 S. W. [2d] 741). Whatever apparent contrary holdings may have appeared in prior (Texas) decisions ceased to be authoritative upon the rendition of that decision. The latest expression of the Supreme Court upon this point is in the case of *Tennant* v. *Dunn,* 130 Tex. 285 (110 S. W. [2d] 53), wherein the question was again carefully reviewed. It is true that, after the royalty interest in the oil has been severed from the land, it becomes personal property, but until such severance it constitutes an interest in the realty and is subject to the above rules." *Cates* v. *Greene* (Tex. Civ. App.), 114 S. W. (2d) 592.

To each of the above-cited cases reported in A. L. R. there is appended an informative annotation,

and in them there is contained a very large number of cited cases in harmony with the foregoing. See; also, *McCully* v. *McCully,* 184 Okla. 264 (86 Pac. [2d] 786); *Miller* v. *Carr,* 137 Fla. 114 (188 South. 103); and *Angichiodo* v. *Cerami,* 28 Fed. Supp. 720.

There can be asserted no valid reason why plaintiffs are not entitled to a decree removing cloud from title to their land. Clearly the circuit court had jurisdiction. *Cleland* v. *Casgrain,* 92 Mich. 139; *Dunn* v. *Peck,* 255 Mich. 391. Defendants caused to be recorded an instrument which purports to give them an interest in plaintiffs' real estate. While it remains of record it impairs the sales value of plaintiffs' property. As was said in *Eaton* v. *Trowbridge,* 38 Mich. 454: "There is a cloud so long as by the record it is at least questionable if the title of defendants is not *prima facie* better than complainant's."

In view of our holding it is not necessary to pass upon other questions discussed in the briefs. Decision herein would not thereby be altered. The decree entered in the circuit court is affirmed, with costs to appellees.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, and STARR, JJ., concurred. BUSHNELL, J., took no part in the decision of this case.