V. A. CORBETT, Plaintiff and Respondent,

v.

Alphonse A. LA BERE; Sylvia La Bere; The Federal Land Bank of Saint Paul, a body corporate; Haakon M. Hove; Evelyn L. Hove; and the First National Bank in Williston, a national banking corporation, and all persons unknown claiming any estate or interest in, or lien or encumbrance upon the property described in the complaint, Defendants,

and

The Federal Land Bank of Saint Paul, a body corporate, Defendant and Appellant.

No. 7470.

Supreme Court of North Dakota.

Jan. 13, 1955.

Joseph P. Stevens, Minot, for plaintiff and respondent.

Walter O. Burk, Williston, Robert J. Barry, St. Paul, Minn., for defendant and appellant.

Michael A. Schmitt, Harold W. Lee, Stanley F. Casey, St. Paul, Minn., of counsel.

MORRIS, Justice.

This is an action to quiet title to one-eighth of one per cent royalty of all the oil and gas produced and saved from a quarter section of land in Williams County. The actual controversy is between the plaintiff and the Federal Land Bank of Saint Paul which claims to own fifty per cent of the oil, gas and other minerals in or under the land. The facts are not in dispute and the findings of fact of the trial court are not challenged. They disclose that on April 2, 1934, Julius C. Bolstad was the fee owner of the land in question and on that day he and his wife executed and delivered a real estate mortgage thereon to the Federal Land Bank of Saint Paul and a second mortgage to the land bank commissioner. Both mortgages were recorded in the office of the register of deeds of Williams County on April 30, 1934.

On November 23, 1935, the mortgagors executed an oil and gas lease to Thomas W. Leach. This lease was recorded on May 28, 1937, and on April 22, 1937, it was assigned to the California Company, the assignment being recorded October 9, 1937.

On September 21, 1937, the Bolstads executed and delivered an instrument denominated "Assignment of Royalty" purporting to convey to the Middlewest Investment Company, Inc. of Minot, North Dakota, one per cent royalty of all the oil and gas produced and saved from the land in question. This instrument was recorded September 27, 1937.

On September 29, 1937, the Middlewest Investment Company, Inc. conveyed by an assignment of royalty to the plaintiff, V. A. Corbett, one-eighth of one per cent royalty of all the oil and gas produced and saved from the land involved. This instrument was recorded on October 1, 1937.

On May 4, 1939, the Federal Land Bank of Saint Paul commenced an action to foreclose its mortgage. The plaintiff, V. A. Corbett, was not made a party to this action. The foreclosure resulted in the issuance, on August 13, 1940, of a sheriff's deed conveying the premises described in the mortgage to the Federal Land Bank of Saint Paul. This deed was recorded on September 16, 1940.

On September 17, 1940, the California Company, assignee of the oil and gas lease that had been executed by the Bolstads, executed a surrender of the lease. The surrender was recorded October 2, 1940.

On December 4, 1943, the Federal Land Bank of Saint Paul conveyed the premises to Alphonse A. La Bere and Sylvia La Bere, reserving unto itself fifty per cent of all the right and title in and to any and all of the oil and gas and other minerals in or under the land. This deed was recorded December 31, 1943. On December 14, 1948, the La Beres leased their fifty per cent to A. M. Fruh and Thomas W. Leach for the purpose of mining and operating for oil and gas. This lease was recorded on December 20, 1948, and was thereafter assigned to the Amerada Petroleum Corporation.

On January 13, 1949, the Federal Land Bank leased its half interest in the oil and gas under the land to A. M. Fruh and Thomas W. Leach, who subsequently assigned the lease to Amerada Petroleum Corporation.

The trial court found in favor of the plaintiff and judgment was entered quieting title in him to one-eighth of one per cent of the royalties of all the oil and gas produced and saved from the land in question. From this judgment the Federal Land Bank of Saint Paul appeals.

The meaning and legal effect of the assignment of royalty constitutes the heart of this controversy. It reads as follows:

"Know All Men By These Presents, That Julius C. Bolstad Sina O. Bolstad his wife of Ray No. Dak., for and in consideration of the sum of One Dollars, and other good and valuable considerations, in hand paid by Middlewest Investment Co. Inc of Minot N D hereinafter called assignee, the receipt of which is hereby acknowledged and confessed, do hereby sell, assign, transfer, convey, and set over unto the said assignee, all of his right, title and interest in and to One Per Cent (1%) Royalty, of all the oil and of all the gas produced and saved from the hereinafter described lands, located in the County of Williams, State of North Dakota, to-wit:

"SE¼NW¼ Lots 2–3–4 Sec. 4 Twp. 154, Range 96
and embracing 160 acres, more or less according to the Government official survey thereof:

"To Have and To Hold unto the said Middlewest Investment Co. Inc his heirs, administrators, and assigns, said royalty as above set forth, the said oil and gas so produced and saved from said lands to be delivered free of cost to the royalty owner in the pipe lines serving said premises or tanks erected thereupon for the purpose of storing such products, together with the rights, privileges and benefits to be derived therefrom, and I do hereby assign said royalty under the lease now covering said lands and agree to warrant and defend the title to the same against any of my acts and deeds adverse hereto."

The subject of this instrument is a "royalty." The appellant contends that the royalty conveyed was personal property, not an interest in real estate, was dependent entirely upon the estate of the mortgagor, Julius Bolstad, and that it was not necessary to join in the foreclosure action the owner of the royalty in order to have his interest eliminated. On the other hand, the plaintiff and respondent contends that the royalty was an interest in the real estate which was not affected by the foreclosure action to which the plaintiff, a royalty owner, was not a party.

 The lease which the Bolstads executed in favor of Thomas W. Leach on November 23, 1935, was for a period of ten years or as long as the lessee produced oil and gas, or either of them. It conveyed to the lessee an interest which under such leases is generally known as a working interest. It is an interest in real property. Petroleum Exchange, Inc., v. Poynter, N.D., 64 N.W.2d 718; Ulrich v. Amer-

ada Petroleum Corp., N.D., 66 N.W.2d 397. The interest retained by the lessor, commonly known as a royalty interest, is also an interest in real estate. A lessor may convey in whole or in part to another his royalty under a specific lease or leases or he may convey his royalty in perpetuity, in which event the conveyance carries the royalty under present leases, if any, and leases made in the future. The unaccrued royalty in each of these instances is an interest in real estate entitling the royalty owner to share in the production of the minerals.

■ The lease on the land involved in this case covered unaccrued royalties and, because the lease might continue as long as oil or gas or either was produced, was without definite limit as to time. Such royalties when separately transferred are interests in land. Arrington v. United Royalty Co., 188 Ark. 270, 65 S.W.2d 36, 90 A.L.R. 765; Callahan v. Martin, 3 Cal.2d 110, 43 P.2d 788, 101 A.L.R. 871; Williams' Adm'r v. Union Bank & Trust Co., 283 Ky. 644, 143 S.W.2d 297, 131 A.L.R. 1364; Palmer v. Crews, 203 Miss. 806, 35 So.2d 430, 4 A.L.R.2d 483; Summers, Oil and Gas, Permanent Edition, Vol. 3, Section 572, page 351.

In the authorities cited above we find these positive statements:

"we now announce the rule to be that royalties in gas or oil, until brought to the surface and reduced to possession, are interests in real estate and not personal property." Arrington v. United Royalty Co. [188 Ark. 270, 65 S.W. 2d 38].

"we are of the view that an operating lessee under a lease for a term of years, or for a term of years and so long as oil shall be produced in paying quantities, has an interest or estate in real property in the nature of a profit a prendre, which is an incorporeal hereditament, and that the assignee of a royalty interest in oil rights under an assignment by the landowner also has an interest or estate in real property in the nature of an incorporeal hereditament." Callahan v. Martin [3 Cal.2d 110, 43 P.2d 792].

"Since unaccrued oil royalty is an interest in the real estate, it follows that a mortgage executed on land in which the mortgagor owns both the royalty and the real estate includes the royalty." Williams' Adm'r v. Union Bank & Trust Co. [283 Ky. 644, 143 S.W.2d 300].

"In the outset, it is to be conceded that a royalty is an interest in real estate, entitling the royalty owner to a share in the production of oil, gas, or other minerals therefrom." Palmer v. Crews [203 Miss. 806, 35 So.2d 434].

In Denver Joint Stock Land Bank of Denver v. Dixon, 57 Wyo. 523, 122 P.2d 842, 848, 140 A.L.R. 1270, it is said:

"And by the great weight of authority, especially as clarified by the decisions in the last decade, a royalty interest, at least if of a permanent nature, has been held to be real and not personal property, * * *."

In Mark v. Bradford, 315 Mich. 50, 23 N.W.2d 201, it was held that an interest or right in accrued oil and gas royalties is personal property but that a right in unaccrued oil and gas royalties is an interest in land and therefore real property.

Some courts, particularly those of Kansas, hold that a royalty is personal property. Tegarden v. Beers, 175 Kan. 610, 265 P.2d 845; Lathrop v. Eyestone, 170 Kan. 419, 227 P.2d 136. But the great weight of authority holds that unaccrued oil and gas royalty is an interest in real estate, especially among those courts that hold as we do that the ordinary oil and gas lease conveys an interest in real property.

Having determined that the royalty conveyed by the "Assignment of Royalty" is an interest in real estate, we now turn to consideration of the extent of that interest. The appellant contends that the assignment.

conveyed to the assignee only the royalty that would accrue to Julius C. Bolstad under the lease to Thomas W. Leach, which was in existence and of record at the time of the execution of the assignment of royalty to the Middlewest Investment Company, Inc. and that when the lease was surrendered by the assignee thereof on September 17, 1940, the royalty provided for by that lease ceased to exist, regardless of any assignments of royalty that Bolstad, the lessor, may have made. On the other hand, the plaintiff and respondent contends that the assignment of royalty conveyed to the Middlewest Investment Company, Inc. one per cent of all royalty that would accrue to the Bolstads under the lease then in existence, together with any future leases, and created an interest in the land which continued after surrender of the lease then in existence, which interest was not terminated or affected by the foreclosure.

The assignment of royalty under consideration is clearly a grant. Section 47–0905, NDRC 1943. Section 47–0911, NDRC 1943 provides:

> "Grants shall be interpreted in like manner with contracts in general except so far as is otherwise provided by this chapter. If the operative words of a grant are doubtful, recourse may be had to its recitals to assist the construction, and if several parts of a grant are absolutely irreconcilable, the former part shall prevail. A clear and distinct limitation in a grant is not controlled by other words less clear and distinct."

Section 47–0913, NDRC 1943 says:

> "A grant shall be interpreted in favor of the grantee, except that a reservation in any grant, and every grant by a public officer or body, as such, to a private party, is to be interpreted in favor of the grantor."

These statutes state rules which have become deeply embedded in the real estate law of the country. Thompson on Real Estate Law, Permanent Edition, Sections 3188, 3189; Tiffany on Real Property, Third Edition, Sections 978, 979, 980.

An examination of the assignment of royalty at once discloses that the operative words of that instrument which constitute the granting clause are clear and purport to convey to the Middlewest Investment Company, Inc. one per cent of all the gas and oil produced and saved from the lands therein described. The habendum clause which immediately follows the description of the land is consistent with the preceding operative words. It is only when we come to the clause "and I do hereby assign said royalty under the lease now covering said lands" that any doubt can be said to arise. This clause is subject to two constructions. It may be an assurance that the granting clause includes the royalty under the outstanding lease, or, on the other hand, it may be said to limit the granting clause to a conveyance of the royalty that would accrue under the outstanding lease.

In Dabney-Johnston Oil Corp. v. Walden, 4 Cal.2d 637, 52 P.2d 237, 245, decided by the Supreme Court of California in banc, it is said:

> "Language of a grant is to be construed most strongly against the grantor. An assignment of oil royalty limited to a particular lease is precarious. Not only may the assignee's rights be terminated where the lessee wrongfully abandons the lease, but oil leases frequently contain rather broad provisions giving the lessee the right to terminate lawfully in specified contingencies. An intent to thus limit the rights of the assignee should be clearly and unequivocally indicated."

In Duvall v. Stone, 54 N.M. 27, 213 P.2d 212, 216, it is said that:

> "unless the intention to limit an assignment of oil royalties to a particular lease is by clear and unequivocable language, the royalty will be construed to apply to any existing or subsequent lease."

The operative words of the granting clause are not doubtful. They are definite in terminology and complete in scope. They convey all of the assignor's title and interest in all the oil and gas produced and saved without limit as to the time of production or the authority, right or identity of the producer. The position in the assignment of the clause referring to the existing lease is subsequent to that of the granting clause. Its meaning is ambiguous. It is conjunctively attached to the habendum clause and contains no words of limitation. It does not modify or limit the granting clause.

We reach the conclusion that the plaintiff and respondent, as assignee of the Middlewest Investment Company, Inc. of Minot, North Dakota, acquired a royalty interest in the land involved herein which was not terminated by the surrender of the oil and gas lease given by the Bolstads on November 23, 1935, to Thomas W. Leach and was not eliminated by the foreclosure of the mortgage by the appellant. The judgment quieting title in the plaintiff is affirmed.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.