# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 46

Petro-Hunt, L.L.C.,                                                                    Plaintiff and Appellee

   v.

Greggory G. Tank, individually, Greggory
G. Tank, Trustee, or his successors in trust,
under the Greggory G. Tank Revocable Living
Trust dated February 19, 2020,                                       Defendants and Appellants

         and

Ron J. Voller, A.M. Fruh, Steven D. Fruh,
Pal Properties, Inc., Jo Marie S. Nelson,
as Trustee UDT dated 4/2/2005, a/k/a the
Donald L. Laber Family Trust, Robert A.
Erickson and Daniel M. Erickson, as
Co-Trustees of the Erickson Family Trust
UDT dated December 11, 2001, Western Energy
Corporation, Bishop of Bismarck Diocese,                        Defendants and Appellees

         and

Tommie S. Tank, Karen Buffington,
as Trustee of the Karen Buffington Family
Mineral Trust, created under a declaration of
trust dated December 8, 2011, James Ellis
Metheny, Kevin Metheny, Ellen Thompson,
Dakota West Energy LLC, Avalon North LLC,
Ralph Christensen, Jr., Erick C. Christensen, as

Trustee of the Erick C. Christensen GST Trust dated August 21, 2004, Andrea Phipps Saunders Banning, Julia Whitman Phipps Baker, Centennial Resources, Inc., Arthur J. Jared, Barbara Steele, Steele Resources LLC, Terry S. Mclvor, Trustee, or his successors in trust, of the Mclvor Family Energy Trust dated August 28, 2019, Western Energy Corporation, 4M Minerals, LLLP, Eleanor Keating and Larry K. Keating, as Trustees of the Roy Keating Residuary Trust, The Dublin Company, Kent M. Lynch, Joseph G. Lynch, Carl A. Nelson, A.C. Harke and Phil W. Starkle,

Defendants

---

No. 20230015

---

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Robin A. Schmidt, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Wade C. Mann (argued) and Zachary Eiken (appeared), Bismarck, ND, for plaintiff and appellee Petro-Hunt, L.L.C.

Paul Neilan (argued), Highland Park, IL, Fintan L. Dooley (appeared), Bismarck, ND, and Lynn Boughey (appeared), Mandan, ND, for defendants and appellants Greggory G. Tank, individually, Greggory G. Tank, Trustee, or his successors in trust, under the Greggory G. Tank Revocable Living Trust dated February 19, 2020.

Charles M. Carvell, Bismarck, ND, for defendant and appellee Ron J. Voller; submitted on brief.

Jon Bogner, Dickinson, ND, for defendants and appellees A.M. Fruh, Steven D. Fruh, and Pal Properties, Inc.; submitted on brief.

Benjamin W. Keup, Bismarck, ND, for defendants and appellees Jo Marie S. Nelson, as Trustee UDT dated 4/2/2005, a/k/a the Donald L. Laber Family Trust, Robert A. Erickson and Daniel M. Erickson, as Co-Trustees of the Erickson Family Trust UDT dated December 11, 2001, and Western Energy Corporation; submitted on brief.

Thomas B. Bair, Mandan, ND, for defendant and appellee Bishop of Bismarck Diocese; submitted on brief.

**Bahr, Justice.**

[¶1]   Greggory Tank, individually and as Trustee, or his successors in trust, of the Greggory G. Tank Revocable Living Trust dated February 19, 2020, appeals the district court's order granting summary judgment and disposing of pending motions. We conclude the court properly determined five 1937 assignments burdened Tank's southwest quarter mineral interest in the subject property. We further conclude the court did not err in holding Tank was not entitled to an accounting under N.D.C.C. § 38-08-09.4(3) and failed to establish Petro-Hunt was a fiduciary. We affirm.

I

[¶2]   This matter involves the ownership of mineral royalty interests in land in McKenzie County, North Dakota. Tank owns unleased mineral interests in and under certain lands located in McKenzie County ("Subject Lands"). Petro-Hunt operates numerous oil and gas wells on pooled spacing units, which includes Tank's property. Petro-Hunt operates seven oil and gas wells on two pooled spacing units inclusive of the Subject Lands. Before this litigation, Tank alleged Petro-Hunt had wrongly distributed less than the full well revenues due to Tank and the other defendants based on five assignments executed in April 1937 ("1937 Assignments"). The 1937 Assignments concern the southwest quarter of the Subject Lands ("Southwest Quarter").

[¶3]   In April 2021, Petro-Hunt commenced this action for interpleader and quiet title seeking, in part, to quiet title to the interest in the oil, gas, and other minerals in the Subject Lands, including the 10% non-participating fractional royalty interest that burdens this interest. Petro-Hunt alleged it was unable to determine ownership in the Subject Lands' mineral interests because Tank had created "issues and uncertainties" by challenging the validity of the outstanding fractional non-participating royalty interests and asserting the outstanding royalty does not burden his mineral interest. Tank and other defendants subsequently answered.

1

[¶4] Tank filed his answer to the complaint in June 2021 and subsequently filed a separate counterclaim against Petro-Hunt, alleging claims for conversion, unjust enrichment, and for an accounting. Among other things, Tank alleged Petro-Hunt improperly assessed him with a proportionate 100% share of costs for drilling and operating the wells at issue. Petro-Hunt answered the counterclaims and denied Tank's allegations.

[¶5] In January 2022, Petro-Hunt moved for partial summary judgment on the legal effect of the 1937 Assignments, and moved for default judgment against the parties who had not answered or otherwise appeared. The district court granted Petro-Hunt's motions in its favor in April 2022. In June 2022, the court entered a partial summary judgment and default judgment against the parties who had not answered or otherwise appeared.

[¶6] Petro-Hunt moved the district court for summary judgment on Tank's counterclaims in August 2022. Over a month after Tank filed his response to Petro-Hunt's motion, Tank filed a request to present and argue three Oklahoma cases. In November 2022, the court granted Petro-Hunt summary judgment on the counterclaims and denied Tank's remaining motions. The court entered an order for judgment and judgment of dismissal with prejudice in December 2022. Tank appealed.

[¶7] In his notice of appeal, Tank appealed the district court's order on motion for summary judgment and pending motions entered on November 8, 2022, and the notice of entry of judgment entered on December 6, 2022. Tank did not specifically appeal from the final judgment of dismissal with prejudice entered on December 5, 2022. We treat the notice of appeal as an appeal from the subsequent, consistent final judgment entered after the district court granted summary judgment to Petro-Hunt on its quiet title claim and dismissed Tank's counterclaims against Petro-Hunt with prejudice. *See Sadek v. Weber*, 2020 ND 194, ¶ 10, 948 N.W.2d 820 ("[A]n attempted appeal from the order granting summary judgment will . . . be treated as an appeal from a subsequently entered consistent judgment, if one exists."). Other defendants have joined Petro-Hunt's briefing on appeal as appellees.

2

## II

[¶8]   This Court's standard for reviewing a district court's summary judgment decision is well established:

> A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*THR Minerals, LLC v. Robinson*, 2017 ND 78, ¶ 6, 892 N.W.2d 193 (quoting *Markgraf v. Welker*, 2015 ND 303, ¶ 10, 873 N.W.2d 26).

[¶9]   "Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts." *N. Oil & Gas, Inc. v. Creighton*, 2013 ND 73, ¶ 11, 830 N.W.2d 556 (quoting *Riedlinger v. Steam Bros, Inc.*, 2013 ND 14, ¶ 10, 826 N.W.2d 340). "[S]ummary judgment should not be used to conduct mini-trials of factual issues." *THR Minerals*, 2017 ND 78, ¶ 15 (quoting *Golden v. SM Energy Co.*, 2013 ND 17, ¶ 18, 826 N.W.2d 610). However, "[s]ummary judgment is appropriate if reasonable minds could reach only one conclusion from the evidence submitted to the district court." *Krenz v. XTO Energy, Inc.*, 2017 ND 19, ¶ 17, 890 N.W.2d 222.

## III

[¶10] Tank identifies three issues on appeal, all of which he asserts are issues of law: Tank argues the district court erred in concluding the 1937 Assignments burdened Tank's Southwest Quarter mineral interest; the court erred by failing to order Petro-Hunt to provide an accounting under N.D.C.C. § 38-08-09.4(3);

and the court erred in concluding Petro-Hunt was not a fiduciary and in denying his request to present and argue three Oklahoma cases.

A

[¶11] Tank argues the district court erred in concluding the 1937 Assignments burdened Tank's Southwest Quarter mineral interest. Our rules for construing assignments are well established:

> [W]e interpret assignments and deeds in the same manner as contracts, with the primary purpose to ascertain and effectuate the parties' or grantor's intent. *See Sargent Cty. Water Res. Dist. v. Mathews*, 2015 ND 277, ¶ 6, 871 N.W.2d 608; *Golden v. SM Energy Company*, 2013 ND 17, ¶ 11, 826 N.W.2d 610; *see also* N.D.C.C. § 9-07-03. The parties' intent is ascertained from the writing alone if possible. N.D.C.C. § 9-07-04. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." N.D.C.C. § 9-07-02. "When the parties' intent can be determined from the contract language alone, interpretation of a contract presents a question of law." *Border Res., LLC v. Irish Oil & Gas, Inc.*, 2015 ND 238, ¶ 15, 869 N.W.2d 758. Similarly, when "an assignment is memorialized in a clear and unambiguous writing, a court should not look to extrinsic evidence to ascertain intent." *Golden*, at ¶ 11. "[W]hen a contract is ambiguous, [however,] extrinsic evidence may be considered to determine the parties' intent, and the contract terms and the parties' intent become questions of fact." *Border Res.*, at ¶ 15.

*THR Minerals*, 2017 ND 78, ¶ 8.

[¶12] George C. Tank and Rose Tank owned the entire mineral estate for the Southwest Quarter when they executed the 1937 Assignments on April 1, 1937. The Assignments are, in relevant aspects, identical, aside from varying grantees and royalty percentages. The first recorded assignment representatively provided, in part:

> KNOW ALL MEN BY THESE PRESENTS, That George C. Tank and Rose Tank, of Keene, N. Dak., for and in consideration of the sum of One dollar and other valuable consideration DOLLARS, and other good and valuable considerations, in hand paid by Mr.

4

A. M. Fruh of Minot, North Dakota hereinafter called assignee, the receipt of which is hereby acknowledged and confessed, *do hereby sell, assign, transfer, convey, and set over unto the said assignee, all of our right, title, and interest in and to Two and one half per cent (2 1/2%) Royalty, of all the oil and of all the gas produced and saved from the hereinafter described lands*, located in the County of McKenzie, State of North Dakota, to wit:

> SW1/4 Sec. 10 Twp. 151 N. Range 96 West, and the SE1/4SE1/4 of Sec. 5, and the NE1/4 and the NW1/4SE1/4 Sec. 8, Twp. 150 N. Range 96 West

and embracing 400 acres, more or less, according to the Government official survey thereof:

To have and to hold unto the said assignee, his heirs, administrators, and assigns said royalty as above set forth, and said oil and gas so produced and saved from said lands to be delivered free of cost to the royalty owner in the pipe line serving said premises or tanks erected thereupon for the purpose of storing such products, together with the rights, privileges and benefits to be derived therefrom, and *I do hereby assign said royalty under the lease now covering said lands as well as any lease, or leases, that may be hereafter made covering said premises*, and agree to warrant and defend to title to the same, and that I have lawful authority to sell and assign said royalty.

(Emphasis added.)

[¶13] The 1937 Assignments conveyed a total 10% nonparticipating fractional royalty. Tank subsequently acquired the unleased mineral interests in the Southwest Quarter. When Tank succeeded to ownership in the Southwest Quarter, an oil and gas lease putatively burdened his mineral interests, but this Court concluded that lease had expired as to the Southwest Quarter in 2009. *See Tank v. Citation Oil & Gas Corp.*, 2014 ND 123, ¶¶ 1, 25, 34, 848 N.W.2d 691. It is undisputed Tank's mineral interests in the Southwest Quarter have been unleased at all relevant times.

[¶14] In the 1937 Assignments, the granting clauses provide the Tanks "do hereby sell, assign, transfer, convey, and set over . . . all of our right, title and interest in and to [the specific percentage] Royalty, of all the oil and of all the gas produced and saved from the" Southwest Quarter. The subsequent

5

habendum clauses further provide the Tanks "do hereby assign said royalty under the lease now covering said lands *as well as any lease, or leases, that may be hereafter made covering said premises . . . .*" (Emphasis added.)

[¶15] The gist of Tank's argument is the grant of the royalty interest was limited by the language in the habendum clause. He contends the additional language specifically requires a lease to be in effect and covering the land for the granting language of the royalty assignments to be operative. Petro-Hunt disputes Tank's interpretation. Relying on *Corbett v. La Bere*, 68 N.W.2d 211 (N.D. 1955), Petro-Hunt argues the assignments conveyed the specific percentages of all the oil and gas produced and saved, and nothing in the habendum clause limited those grants.

[¶16] Concluding *Corbett*, 68 N.W.2d at 213-16, was "persuasive and controlling," the district court construed the 1937 Assignments to burden Tank's mineral interest in the Subject Lands with a 10% non-participating fractional royalty interest. Although Tank acknowledges the *Corbett* decision addresses similar assignment language, he attempts to distinguish the *Corbett* case from this case because the "royalty clauses" here also contain the additional words "as well as any lease, or leases, that may be hereafter made covering said premises." Tank's argument is unavailing.

[¶17] In *Corbett*, 68 N.W.2d at 216, this Court held the additional language in the habendum clause contained no words of limitation and did not modify or limit the granting clause. This Court explained:

> The operative words of the granting clause are not doubtful. They are definite in terminology and complete in scope. They convey all of the assignor's title and interest in all the oil and gas produced and saved without limit as to the time of production or the authority, right or identity of the producer. The position in the assignment of the clause referring to the existing lease is subsequent to that of the granting clause. Its meaning is ambiguous. It is conjunctively attached to the habendum clause and contains no words of limitation. It does not modify or limit the granting clause.

*Id.*

[¶18] Like in *Corbett*, the granting clauses in the 1937 Assignments do not contain words of limitation. *See Corbett*, 68 N.W.2d at 216. Specifically, the broad granting language in the 1937 Assignments does not include any condition or limitation on the royalty interests assigned and does not tie the assigned royalty interest to the existence of an oil and gas lease. Without any such limitation or condition, the subsequent clauses merely explain that the assignments also include the rights to any royalty accruing under any oil and gas lease that was then existing or that may exist in the future.

[¶19] The district court did not err in construing the 1937 Assignments and did not err in concluding the 1937 Assignments burdened Tank's Southwest Quarter mineral interest.

B

[¶20] Tank's two remaining issues are interrelated—the district court erred in failing to order an accounting under N.D.C.C. § 38-08-09.4(3) and in concluding Petro-Hunt was not a fiduciary.

[¶21] The district court held N.D.C.C. § 38-08-08(1) allows Petro-Hunt to assess 100% costs against Tank's 84% working interest in the minerals at issue because Tank is an unleased mineral owner; Tank is entitled to a 16% cost-free royalty from Petro-Hunt; and Tank ratified the costs by electing to proceed with drilling. The court held it was undisputed Tank elected to participate in the wells. The court further held North Dakota has not recognized a fiduciary relationship between the operator and unleased owner under these facts and circumstances, and our courts have not recognized a fiduciary relationship under a joint operating agreement or North Dakota Industrial Commission order. *See Come Big or Stay Home, LLC v. EOG Res., Inc.*, 2012 ND 91, ¶ 18, 816 N.W.2d 80. The court held the lack of a fiduciary relationship between the parties hindered Tank's remaining counterclaims. The court concluded that, because North Dakota law allows Petro-Hunt to assess 100% costs against Tank's 84% working interest in the minerals at issue as an unleased mineral owner, Tank had no right or interest in the money that he claims is improperly

7

held by Petro-Hunt. The court held his equitable counterclaims, therefore, failed.

[¶22] Tank argues N.D.C.C. § 38-08-08(1) requires just compensation in its use of the phrase "just and equitable share," and N.D.C.C. § 38-08-09.4(3) provides a specific right to an accounting by requiring a unitization plan to "includ[e] a detailed accounting procedure governing all charges and credits incident to such operations." Tank argues his right to an accounting is also based on "any fiduciary relationship" that exists between Petro-Hunt and the landowners and on N.D. Const. art. 1, § 9 ("All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law[.]"), and N.D. Const. art. 1, § 16 ("Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner, unless the owner chooses to accept annual payments as may be provided for by law.").

[¶23] Tank contends the affidavits he submitted to the district court demonstrate Petro-Hunt's statutory violations and were undisputed. He asserts his minerals and the control over them were taken by "Unitization and Pooling Orders" in adjudicatory processes that transferred his minerals and his chance to develop his own minerals to oversight by the Industrial Commission. He further asserts he has been denied information regarding the mineral acres being produced in the "unitized" drilling and spacing units which are not subject to the assignments, and an accounting is necessary to show whether Petro-Hunt owes Tank compensation for the development of these acres.

[¶24] Petro-Hunt responds that Tank has not shown he is entitled to an accounting. Petro-Hunt contends Tank has no right to an accounting because his monetary counterclaims failed, mainly because he misunderstands N.D.C.C. § 38-08-08(1) and the legal effect of his elections to participate in the Subject Wells. Petro-Hunt argues the Industrial Commission's compulsory pooling orders in this case did not impose any fiduciary duty between Petro-Hunt and Tank, and the unitization statutes, N.D.C.C. §§ 38-08-09.1 through 38-08-09.16, do not apply to pooled spacing units. Petro-Hunt asserts the

8

Industrial Commission created two separate spacing units inclusive of Tank's mineral interests under N.D.C.C. § 38-08-07 and "force pooled" those spacing units under N.D.C.C. § 38-08-08, but the Commission did not unitize Tank's interests under N.D.C.C. §§ 38-08-09.1 through 38-08-09.16. Therefore, N.D.C.C. § 38-08-09.4(3) and its accounting requirements for a unitized area do not apply in this case.

[¶25] "The right to an accounting in all cases is a preliminary question which must be answered in the affirmative before the actual accounting is ordered." *Stockmen's Ins. Agency, Inc. v. Guarantee Rsrv. Life Ins. Co. of Hammond, Indiana*, 217 N.W.2d 455, 459-60 (N.D. 1974). The party claiming the relief, Tank in this case, "has the burden of proving its right to the accounting. If not so proved, there is no right to an accounting and the cause is to be dismissed." *Id.* at 460.

1

[¶26] Tank argues the district court erred by failing to order Petro-Hunt to provide an accounting under N.D.C.C. § 38-08-09.4(3). Although less than clear, Tank appears to argue he has a statutory right to an accounting under N.D.C.C. § 38-08-08(1) and N.D.C.C. § 38-08-09.4(3).

[¶27] Statutory interpretation is a question of law, which is fully reviewable on appeal. *Kutcka v. Gateway Bldg. Sys., Inc.*, 2023 ND 91, ¶ 6, 990 N.W.2d 605. Our primary objective in interpreting a statute is to determine the intent of the legislation. *Id.*

> In ascertaining the intent of the legislation, we look first to the words in a statute, giving them their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1-02-

9

03 and 1-02-38(2). We construe statutes to give effect to all of their provisions, so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1-02-38(2) and (4).

*Kutcka*, at ¶ 6 (quoting *Ackre v. Chapman & Chapman*, P.C., 2010 ND 167, ¶ 10, 788 N.W.2d 344 (citations omitted)).

[¶28] Under N.D.C.C. § 38-08-07, the North Dakota Industrial Commission may create spacing units and force pool interests in the spacing units under N.D.C.C. § 38-08-08. Section 38-08-08(1), N.D.C.C., provides in relevant part:

> When two or more separately owned tracts are embraced within a spacing unit, or when there are separately owned interests in all or a part of the spacing unit, then the owners and royalty owners thereof may pool their interests for the development and operation of the spacing unit. In the absence of voluntary pooling, the commission upon the application of any interested person shall enter an order pooling all interests in the spacing unit for the development and operations thereof. Each such pooling order must be made after notice and hearing, and must be upon terms and conditions that are *just and reasonable*, and that afford to the owner of each tract or interest in the spacing unit *the opportunity to recover or receive, without unnecessary expense*, that owner's *just and equitable share*. Operations incident to the drilling of a well upon any portion of a spacing unit covered by a pooling order must be deemed, for all purposes, the conduct of such operations upon each separately owned tract in the drilling unit by the several owners thereof. That portion of the production allocated to each tract included in a spacing unit covered by a pooling order must, when produced, be deemed for all purposes to have been produced from such tract by a well drilled thereon. . . . *An unleased mineral interest pooled after July 31, 2009, is entitled to a cost-free royalty interest equal to the acreage weighted average royalty interest of the leased tracts within the spacing unit or, at the operator's election, a cost-free royalty interest of sixteen percent*. The remainder of the unleased interest must be treated as a lessee or cost-bearing interest.

(Emphasis added.)

[¶29] Sections 38-08-09.1 through 38-08-09.16, N.D.C.C., allow the Industrial Commission to order the unitization of all interests in a given area for production. N.D.C.C. § 38-08-09.1 (providing "sections 38-08-09.1 through 38-08-09.16 are applicable" to utilized management). Section 38-08-09.4, N.D.C.C., governs the order and plan for the unitization of interests. Specifically, N.D.C.C. § 38-08-09.4(3), states:

> In addition to such other terms, provisions, conditions, and requirements found by the commission to be reasonably necessary or proper to effectuate or accomplish the purposes of sections 38-08-09.1 through 38-08-09.16, and subject to the further requirements hereof, each such plan of unitization must contain fair, reasonable, and equitable provisions for:
>
> . . . .
>
> 3. The manner in which the unit and the further development and operation of the unit area shall or may be financed and the basis, terms, and conditions on which the cost and expense thereof shall be apportioned among and assessed against the tracts and interests made chargeable therewith, *including a detailed accounting procedure governing all charges and credits incident to such operations*.
>
> . . . .

(Emphasis added.)

[¶30] Based on the arguments Tank has raised on appeal, we conclude the specific statutory and constitutional provisions on which Tank relies do not provide Tank a legal right to an accounting. Section 38-08-07, N.D.C.C., which relates to pooling, applies in this case. However, N.D.C.C. § 38-08-07 does not provide for an accounting. Section 38-08-09.4(3), N.D.C.C., relating to unitization, requires Industrial Commission orders creating a unit under the provisions of sections 38-08-09.1 through 38-08-09.16 include a detailed plan of unitization, including detailed accounting procedures. However, Tank did not demonstrate the Industrial Commission unitized his interests under sections 38-08-09.1 through 38-08-09.16. Absent a plan of unitization, N.D.C.C. § 38-08-09.4(3) does not apply to Tank. Therefore, the district court did not err by not ordering Petro-Hunt to provide an accounting under N.D.C.C. § 38-08-09.4(3).

11

[¶31] Tank argues the district court erred in concluding Petro-Hunt is not a fiduciary under the law and facts of this case, and erred in denying his request to present and argue three Oklahoma cases.

[¶32] Tank argues grounds exist in this case for an equitable accounting because Petro-Hunt is Tank's "fiduciary/trustee/agent" and, under statute and the pooling order, Tank is Petro-Hunt's beneficiary. Tank contends he is Petro-Hunt's beneficiary because Petro-Hunt: is the only party entitled to drill wells in the units into which Tank's minerals are force pooled; brings the minerals to the surface; sells them; collects payments of sales and holds them; is compelled to distribute income to owners in the proportion as their interest may appear in the spacing unit; is obligated to provide title opinions to owners when needed to help in establishing ownership or its proportions; and is obligated to have a detailed accounting procedure governing all charges and credits incident to such operations; and because all of these actions of Petro-Hunt, as operator, must be done without unnecessary expense to the owners.

[¶33] In support of his argument, Tank broadly relies on our decision in *Burlington Northern & Sante Fe Railway Co. v. Burlington Resources Oil & Gas Co.*, 1999 ND 39, ¶ 28, 590 N.W.2d 433, to "describe" the role of a fiduciary when an agent is a fiduciary under a duty to obey the will of the principal. Tank's reliance on *Burlington Northern* is misplaced because, in *Burlington Northern*, we also said "[a]gency law generally recognizes a principal's authorization to an agent and the agent's duties to the principal are determined by the parties' agreement and the nature of the fiduciary relationship." *Id.* at ¶ 21. As will be discussed, Tank has not asserted a fiduciary relationship based on specific language of an agreement between Petro-Hunt and Tank.

[¶34] In response, Petro-Hunt asserts this Court has previously held that pooling under N.D.C.C. § 38-08-08 alone does not create a co-tenancy between a well operator and other pooled interest owners so as to support a fiduciary duty. *See Come Big or Stay Home*, 2012 ND 91, ¶ 20. Petro-Hunt further asserts this Court has likewise recognized that merely electing to participate in a well

does not create a fiduciary duty between a well operator and the participating non-operating owner and that, although an agreement between those parties may impose a fiduciary duty, the "existence and scope of a fiduciary duty depends upon the language of the parties' agreement." *Id.* at ¶ 20 (quoting *Grynberg v. Dome Petroleum Corp.*, 1999 ND 167, ¶ 21, 599 N.W.2d 261).

[¶35] Generally, an equitable accounting "is never ordered as a matter of course." *Stuber v. Taylor*, 200 N.W.2d 276, 280 (N.D. 1972).

> Equitable jurisdiction for an accounting may be invoked when (1) there is a fiduciary relationship between the parties, accompanied by a duty on the part of the defendant to render an account, (2) there are mutual accounts, or, if the account is all on one side, the account is complicated, and (3) there is a need for discovery.

*Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 31, 680 N.W.2d 634 (citing *Stuber*, at 280); 1 Am. Jur. 2d *Accounts and Accounting*, § 54 (1994)). "A court may also assume jurisdiction for an accounting if there is some other basis for equitable jurisdiction." *Id.*; *see also Stuber*, at 280; 1 Am. Jur. 2d *Accounts and Accounting* at § 54.

[¶36] "Whether the plaintiff has established a right to an accounting and the existence of a relationship sufficient to support that right are questions of fact, which the court must determine." 1A C.J.S. *Accounting* § 59. However, "[a] necessary prerequisite to the right to maintain a suit for equitable accounting is the absence of an adequate remedy at law." 1 Am. Jur. 2d *Accounts and Accounting* § 52. "The touchstone for equity is the lack of an adequate legal remedy." *Lonesome Dove Petroleum, Inc. v. Holt*, 889 F.3d 510, 516 (8th Cir. 2018) (quoting *Superior, Inc. v. Behlen Mfg. Co.*, 2007 ND 141, ¶ 17, 738 N.W.2d 19, 26 (citation omitted)). "Courts 'should tread carefully when entering the realm of equitable remedies, fashioning them only when directed to do so by statutes and court rules, when there is no adequate legal remedy, or when the equitable remedy is better adjusted to render complete justice.'" *Id.* (quoting *Burr v. Trinity Med. Ctr.*, 492 N.W.2d 904, 908 (N.D. 1992)).

[¶37] "[T]his Court will not interfere with the district court's decision on equity unless an abuse of discretion is clearly established." *Beckstrand by & through*

13

*Beckstrand v. Beckstrand*, 2017 ND 20, ¶ 10, 890 N.W.2d 213; *see also Jerri L. v. Lofthus*, 2020 ND 58, ¶ 4, 940 N.W.2d 612 ("When a court exercises its discretion after balancing the equities of the case, we will not reverse unless an abuse of discretion is conclusively established."). "A court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Beckstrand*, at ¶ 10.

[¶38] In *Come Big or Stay Home*, 2012 ND 91, ¶¶ 20-21, this Court held the district court did not err in granting summary judgment on the fiduciary duty claim against defendant EOG Resources because CBSH, as the mineral or leasehold interest owner, could not establish a breach of fiduciary duty. We explained:

> North Dakota law makes it clear that the pooling of separately owned tracts does not create a cotenancy. Section 38-08-09.7, N.D.C.C., provides that "[t]he obligation or liability of the lessee or other owners of the oil and gas rights in the several separately owned tracts for the payment of unit expenses is at all times several and not joint or collective." Section 38-08-09.8, N.D.C.C., also provides that "[n]othing contained in sections 38-08-09.1 through 38-08-09.16 . . . may be construed to require a transfer to or vesting in the unit of title to the separately owned tracts or leases thereon within the unit area." The Oklahoma Supreme Court, construing similar statutes governing forced and voluntary pooling, has also recognized that pooling and unitization of separately owned tracts do not create a cotenancy between the several leaseholders. *See Tenneco Oil Co. v. District Court of the Twentieth Judicial Dist.*, 465 P.2d 468, 469 (Okla.1970). As a matter of law, CBSH and EOG are not cotenants.
>
> Moreover, even if EOG owed CBSH fiduciary duties under some viable theory, we have said the "existence and scope of a fiduciary duty depends upon the language of the parties' agreement." *Grynberg v. Dome Petroleum Corp.*, 1999 ND 167, ¶ 21, 599 N.W.2d 261. We have upheld the district court's refusal to supply a term to the invitations to participate requiring EOG to give CBSH well information without restrictions. CBSH, as a matter of law, cannot establish a breach of fiduciary duty in this case.

14

Tank has not referred this Court to any language of an agreement between the parties to establish the existence and scope of a fiduciary duty.

[¶39] The district court denied Tank's claim for an equitable accounting because Tank has no right to the money he claims Petro-Hunt improperly held. The court's denial of Tank's claim for an equitable accounting under these circumstances was not an abuse of discretion. *See Stockmen's Ins. Agency*, 217 N.W.2d at 463 (stating because plaintiff did not prevail on its causes of actions, "it follows that the plaintiff is not entitled to an accounting"); *Ritter*, 2004 ND 117, ¶ 32 (concluding "there is an equitable basis for an accounting" when we reversed the district court's dismissal of plaintiffs' conversion claim against the defendant oil company).

[¶40] The district court denied Tank's request to present and argue three Oklahoma cases. Although the court's order granting summary judgment did not specifically analyze each Oklahoma case cited by Tank, it did address and distinguish Oklahoma case law. The court noted Tank's argument is based on Oklahoma and North Dakota law. Citing *Come Big or State Home*, 2012 ND 91, the court wrote, "North Dakota is aware of Oklahoma law regarding fiduciary duties and non-operating working interest owners." The court noted "there are North Dakota cases specifically addressing Oklahoma case law." The court then distinguished the Oklahoma cases, explaining, "The cases presented by Tank indicate the fiduciary relationship stems from Oklahoma statute, Commission order, and joint operating agreement. North Dakota courts have not found a fiduciary relationship under a joint operating agreement or Commission order."

[¶41] Tank also argues the district court abused its discretion in failing to consider three Oklahoma cases finding a fiduciary duty owed by a unit to the royalty owners and lessees who are parties to the unitization agreement or subject to the order creating the unit. *See Leck v. Continental Oil Co.*, 800 P.2d 224, 229 (Okla. 1989); *Olansen v. Texaco Inc.*, 587 P.2d 976, 985 (Okla. 1978); *Hebble v. Shell W. E & P, Inc.*, 238 P.3d 939, 943 (Okla. Civ. App. 2009). Tank relies on these Oklahoma cases for the proposition the Oklahoma Supreme Court has recognized the existence of a fiduciary duty that is owed by a unit to

the royalty owners and lessees who are parties to the unitization agreement or subject to the respective commission order creating the unit.

[¶42] The district court considered the Oklahoma cases and did not err by relying on North Dakota statutes and case law instead of Oklahoma case law to determine whether a fiduciary duty exists under the facts and circumstances of this case. The court did not abuse its discretion in denying Tank's request to present and argue three Oklahoma cases.

[¶43] We conclude Tank has not provided any basis for holding a fiduciary duty exists under the facts and circumstances of this case. Tank has not pointed this Court to any fiduciary duty imposed by the Industrial Commission's compulsory pooling order or to any specific contractual provision imposing a fiduciary duty. Because Tank has not shown a specific statutory or constitutional right to an accounting and has not established a genuine issue of material fact regarding a fiduciary relationship with Petro-Hunt to support an equitable claim for accounting, we affirm the district court's order granting summary judgment.

IV

[¶44] "We do not address inadequately briefed issues." *Montana-Dakota Utils. Co. v. Behm*, 2019 ND 139, ¶ 19, 927 N.W.2d 865. To the extent Tank makes other passing arguments without identifying them as separate issues or providing sufficient briefing on appeal, Tank has waived them and the arguments are without merit. *See Smestad v. Harris*, 2011 ND 91, ¶ 5, 796 N.W.2d 662; *Darby v. Swenson Inc.*, 2009 ND 103, ¶ 23, 767 N.W.2d 147; *Olsrud v. Bismarck-Mandan Orchestral Ass'n*, 2007 ND 91, ¶ 25, 733 N.W.2d 256; *see also* N.D.R.App.P. 28(b)(4), (7). We affirm the judgment.

16

[¶45] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr